IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **Christian Labor Association**; **Kaski Inc.**; **Nordic Group Inc.**; **Roen Salvage Co.**; **Luke Krhin**; **Shawn Kunnari**; **Dylan Smith**, <br><br> Plaintiffs, <br><br> v. <br><br> **City of Duluth**; **City of Cloquet**; **City of Two Harbors**; **Western Lake Superior Sanitary District**; **Duluth Building and Construction Trades Council**, <br><br> Defendants. | Case No. _____ |

## COMPLAINT

The plaintiffs bring suit to enjoin the cities of Duluth, Cloquet, and Two Harbors, as well as the Western Lake Superior Sanitary District, from enforcing their project labor agreements (PLAs) with the Duluth Building and Construction Trades Council.

These project labor agreements prohibit contractors from working on any public-works project covered by the PLA unless they recognize a union affiliated with the Duluth Building and Construction Trades Council as the exclusive representative of their employees—even if the contractor's employees have chosen not to unionize, and even if the contractor's employees have chosen a different union to represent them. It also compels the employees of any contractor or subcontractor to become dues-paying members of a Council-affiliated union and maintain their union membership while working on a public-works project subject to the PLA.

These project labor agreements violate the rights of contractors and their employees under the First and Fourteenth Amendments. These agreements also violate the federal antitrust laws. The plaintiffs seek declaratory and injunctive relief against their continued enforcement, as well as damages.

## JURISDICTION AND VENUE

1.   The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2.   Venue is proper because a substantial part of the events giving rise to the claims occurred in the district of Minnesota. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3.   Plaintiff Christian Labor Association is an independent labor union representing workers throughout the United States. Its offices are located at 18505 State Highway 371, Brainerd, Minnesota 56401.

4.   Plaintiff Kaski Inc. is a union contractor that employs workers affiliated with the Christian Labor Association. Its principal place of business is located at 2321 West 1st Street, Duluth, Minnesota 55806.

5.   Plaintiff Nordic Group Inc. is a union contractor that employs workers affiliated with the Christian Labor Association. Its principal place of business is located at 1583 County Road 4, Carlton, Minnesota 55718.

6.   Plaintiff Roen Salvage Co. is a non-union contractor. Its principal place of business is located at 180 East Redwood Street, Sturgeon Bay, Wisconsin 54235.

7.   Plaintiff Luke Krhin is a member of the Christian Labor Association. He is employed by Nordic Group as a senior carpenter, foreman, and superintendent. Mr. Krhin resides in St. Louis County.

8.   Plaintiff Shawn Kunnari is a member of the Christian Labor Association. He is employed by Nordic Group as an operator. Mr. Kunnari resides in Lake County.

9.   Plaintiff Dylan Smith is a non-union construction crew member employed by Roen Salvage. Mr. Smith resides in Carlton County.

10.   Defendant City of Duluth is a municipal corporation organized under the laws of Minnesota. It can be served at 411 West 1st Street, Duluth, Minnesota 55802.

11.   Defendant City of Cloquet is a municipal corporation organized under the laws of Minnesota. It can be served at 101 14th Street, Cloquet, Minnesota 55720-1657.

12.   Defendant City of Two Harbors is a municipal corporation organized under the laws of Minnesota. It can be served at 522 1st Avenue, Two Harbors, Minnesota 55616.

13.   Defendant Western Lake Superior Sanitary District is a special purpose unit of government created by the Minnesota Legislature in 1971. It can be served at 2626 Courtland Street, Duluth, Minnesota 55806.

14.   Defendant Duluth Building and Construction Trades Council is an organization comprising over 19 local unions. The Council may be served by serving its president, Craig Olson, at 2002 London Road #106, Duluth, Minnesota 55812.

## FACTS

15.   A project labor agreement (PLA) is a mandatory union collective-bargaining agreement that all contractors must sign to work on a public-works construction project.

16.   A project labor agreement will often force participating contractors to: (a) recognize certain unions as the exclusive representative of their employees; (b) require that their employees who work on a public-works project become dues-paying members of those unions while working on any project subject to the PLA; (c) contribute to the union's pension and healthcare funds; (d) operate according to the union's work rules; and (e) follow the union's procedures for hiring, firing, and disciplining

employees who work on a project covered by the PLA. Some project labor agreements may be less restrictive and impose only some of these requirements on participating contractors.

17.   Twenty-five (25) states ban the use of project labor agreements.[1]

18.   The city of Duluth, the city of Cloquet, the city of Two Harbors, and the Western Lake Superior Sanitary District have entered into a project labor agreement with the Duluth Building and Construction Trades Council.

19.   The defendants have been imposing these project labor agreements on public-works projects that are offered to contractors, and they will continue imposing these PLAs on future public-works projects unless they are enjoined from doing so.

20.   Only contractors (and subcontractors) who agree to the terms of the project labor agreement with the Duluth Building and Construction Trades Council are eligible to work on public-works projects subject to the PLA.

21.   The project labor agreements compel contractors and subcontractors to recognize a union that belongs to the Duluth Building and Construction Trades Council as the "sole and exclusive bargaining representatives of all craft employees within their respective jurisdictions working on the Project." Exhibit 1, art. III, § 1; *see also* Exhibit 2, art. III, § 1; Exhibit 3, art. III, § 1; Exhibit 4, art. III, § 1.

22.   The project labor agreements also require contractors and subcontractors to hire employees who will work on the covered project through the Council-affiliated unions' job-referral system. *See* Exhibit 1, art. IV; Exhibit 2, art. IV; Exhibit 3, art. IV; Exhibit 4, art. IV.

---

1.  The States that ban PLAs are: Alabama, Arkansas, Idaho, Iowa, Florida, Georgia, Kentucky, Louisiana, Mississippi, Missouri, Michigan, Montana, Nevada, New Mexico, North Carolina, North Dakota, Nebraska, Oklahoma, South Carolina, South Dakota, Tennessee, Utah, Virginia, West Virginia, and Wisconsin.

23.   And the project labor agreements compel the employees of contractors and subcontractors to "become" and "remain members" of a Council-affiliated union while working on any public-works project subject to the PLA. *See* Exhibit 1, art. III, § 2; Exhibit 2, art. III, § 2; Exhibit 3, art. III, § 2; Exhibit 4, art. III, § 2.

24.   This precludes non-union workers—as well as workers who belong to unions that are not affiliated with the Duluth Building and Construction Trades Council—from working on any public-works project subject to the PLA. And it compels workers to join and pay a Council-affiliated union as a condition of working on the defendants' public-works projects.

## FACTS RELATED TO STANDING

25.   Plaintiff Christian Labor Association (CLA) is an independent labor union representing workers throughout the United States. The Christian Labor Association is not affiliated with the Duluth Building and Construction Trades Council, so none of its members are permitted to work on projects subject to the defendants' PLAs unless they renounce their membership in CLA and join a Council-affiliated union.

26.   The members of the Christian Labor Association have exercised their right to join the CLA rather than a Council-affiliated union—a right that is protected by the First Amendment and the National Labor Relations Act.

27.   The Christian Labor Association has associational standing to seek declaratory and injunctive relief against the enforcement of the defendants' project labor agreements.

28.   To establish associational standing, an entity must show that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the

lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

29.   The members of the Christian Labor Association would have standing to challenge the defendants' project labor agreements if they sued as individuals, because the PLAs prohibit the members of CLA from working on the defendants' public-works projects unless they renounce their membership in CLA and join a Council-affiliated union. This inflicts injury in fact, and this injury will be remedied by an injunction against the continued enforcement of the defendants' project labor agreements.

30.   The interests that the Christian Labor Association seeks to protect in the litigation are germane to the organization's purpose. As a labor union, CLA has a fiduciary duty to its members and looks after their interests, and it seeks to maximize work opportunities for its members and the contractors that employ them.

31.   Neither the claims asserted by the Christian Labor Association nor the relief requested in this litigation requires the participation of the organization's individual members.

32.   Plaintiffs Kaski and Nordic Group are union contractors whose employees belong to the Christian Labor Association rather than a Council-affiliated union. Plaintiff Roen Salvage is a non-union contractor. Because their employees have exercised their constitutional right to decline membership in a Council-affiliated union, each of these contractor plaintiffs is ineligible to work on any public-works project subject to the defendants' PLAs unless it: (1) recognizes a union that belongs to the Duluth Building and Construction Trades Council as the exclusive representative of its employees—even though its employees have exercised their constitutional and statutory rights to decline representation from a Council-affiliated union; and (2) hires employees from a Council-affiliated union's job-referral system rather than use its own employees to perform work on defendants' public-works projects. This inflicts injury

in fact. This injury is caused by the defendants' enforcement of the disputed project labor agreements, and it will be redressed by declaratory and injunctive relief that prevents the defendants from enforcing these PLAs.

33.   Plaintiffs Kaski, Nordic Group, and Roen Salvage are likely to bid on the defendants' public-works projects in the reasonably foreseeable future, and each of them is able and ready to apply for that work. They therefore have standing to seek declaratory and injunctive relief against the enforcement of the defendants' project labor agreements.

34.   Plaintiffs Kaski, Nordic Group, and Roen Salvage have also been prevented from obtaining past work on account of the defendants' project labor agreements. They therefore have standing to seek damages for these past injuries.

35.   Plaintiffs Luke Krhin and Shawn Kunnari are members of the Christian Labor Association and employees of Nordic Group. Plaintiff Dylan Smith is a non-union construction crew member employed by Roen Salvage. The defendants' project labor agreements prevent Mr. Krhin, Mr. Kunnari, and Mr. Smith from working on the defendants' public-works projects because they have exercised their constitutional and statutory right to decline membership in a Council-affiliated union. The project labor agreements also compel each of the employee plaintiffs to obtain employment through the Council-affiliated unions' job-referral systems if they want to perform any work on the defendants' public-works projects. This inflicts injury in fact. These injuries are caused by the defendants' enforcement of the disputed project labor agreements, and they will be redressed by declaratory and injunctive relief that prevents the defendants from enforcing these PLAs. Mr. Krhin, Mr. Kunnari, and Mr. Smith therefore have standing to seek declaratory and injunctive relief against the continued enforcement of the defendants' project labor agreements.

36.   Mr. Krhin, Mr. Kunnari, and Mr. Smith have also been prevented from obtaining past work from the defendants on account of their project labor agreements. They therefore have standing to seek damages for these past injuries.

## CLAIM FOR RELIEF NO. 1:
## VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS

37.   Both public and private employees have a constitutional right to decide whether they will join or associate with a union. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984) ("Freedom of association therefore plainly presupposes a freedom not to associate." (citing *Abood v. Detroit Board of Education*, 431 U.S. 209, 234–35 (1977)); *Pattern Makers' League of N. Am., AFL-CIO v. NLRB*, 473 U.S. 95, 106 (1985) ("Full union membership thus no longer can be a requirement of employment.").

38.   The Constitution also forbids a public employer to require its employees to join or financially support a union as a condition of employment. *See Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018).

39.   A public employer cannot evade the holdings of *Abood* and *Janus* by contracting out its work and then allowing that work to be performed only by employees who agree to join and pay a Council-affiliated union.

40.   Nor can a governmental entity require the employees of its contractors or subcontractors to relinquish their First Amendment rights as a condition of working on public-works projects. *See Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668, 674 (1996) ("The government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech' even if he has no entitlement to that benefit" (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972))."

41.   The court should declare that the defendants' project labor agreements violate the First and Fourteenth Amendments, and it should enjoin the defendants from enforcing them. The court should also enjoin the defendants from imposing any project labor agreement that compels union membership on any current or future public-works project.

42.   The court should also award nominal and compensatory damages to each of the plaintiffs under 42 U.S.C. § 1983.

43.   The plaintiffs assert this claim under the causes of action established in 42 U.S.C. § 1983, *Ex parte Young*, 209 U.S. 123 (1908), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## CLAIM FOR RELIEF NO. 2:
## THE DEFENDANTS' PROJECT LABOR AGREEMENTS RESTRAIN COMPETITION IN VIOLATION OF THE ANTITRUST LAWS

44.   The federal antitrust laws prohibit contracts that restrain competition. *See, e.g.*, 15 U.S.C. §§ 1–2.

45.   The defendants' project labor agreements restrain competition by disqualifying contractors and subcontractors from working on the defendants' public-works projects unless they: (1) agree to recognize a union affiliated with the Duluth Building and Construction Trades Council as the exclusive representative of their employees; (2) agree to obtain their employees for the defendants' public-works projects through the job-referral systems operated by unions affiliated with the Duluth Building and Construction Trades Council; (3) force their employees to become dues-paying members of a Council-affiliated union while working on any project subject to the PLA.

46.   The defendants' project labor agreements also restrain competition by disqualifying individual laborers from working on the defendants' public-works projects unless they join and pay a union affiliated with the Duluth Building and Construction Trades Council.

47.   The labor exemption to the federal antitrust laws is inapplicable to the defendants' project labor agreements. *See Connell Construction Co. v. Plumbers & Steamfitters Local No. 100*, 421 U.S. 616, 622–23 (1975) ("Labor policy clearly does not require, however, that a union have freedom to impose direct restraints on competition among those who employ its members. . . . [T]he nonstatutory [labor] exemption offers no similar protection when a union and a nonlabor party agree to restrain competition in a business market.").

48.   The court should therefore declare that the defendants' project labor agreements violate the federal antitrust laws, and it should enjoin the defendants from enforcing them.

49.   The court should also award treble damages to each of the plaintiffs under 15 U.S.C. § 15.

50.   The plaintiffs assert this claim under the causes of action established in 42 U.S.C. § 1983, *Ex parte Young*, 209 U.S. 123 (1908), the Declaratory Judgment Act, 28 U.S.C. § 2201, and the federal antitrust laws, 15 U.S.C. §§ 15, 26.

## DEMAND FOR RELIEF

51.   The plaintiffs respectfully request that the court:

    a.   declare that the defendants are violating the plaintiffs' constitutional rights under the First and Fourteenth Amendments by enforcing the project labor agreements with the Duluth Building and Construction Trades Council;

    b.   declare that the defendants are violating the federal antitrust laws by enforcing these project labor agreements;

    c.   issue a preliminary and permanent injunction that prevents the defendants from enforcing the project labor agreements with the Duluth

Building and Construction Trades Council, and that prevents the defendants from requiring union membership as a condition to working on any current or future public-works project;

d.  award nominal and compensatory damages to each of the plaintiffs, including treble damages under 15 U.S.C. § 15;

e.  award costs and attorneys' fees under 42 U.S.C. § 1988;

f.  grant other and further relief that the Court may deem just, proper, or equitable.

Respectfully submitted.

/s/ Thomas R. Revnew

JONATHAN F. MITCHELL*
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

THOMAS R. REVNEW
Minnesota Bar No. 0295620
Peters, Revnew, Kappenman
& Anderson, P.A.
7300 Metro Boulevard, Suite 500
Minneapolis, Minnesota 55439
(952) 921-4622 (phone)
(952) 896-1704 (fax)
trevnew@prkalaw.com

WALTER S. ZIMOLONG*
Pennsylvania Bar No. 89151
Zimolong LLC
P.O. Box 552
Villanova, PA 19085
(215) 665-0842 (phone)
wally@zimolonglaw.com

* *pro hac vice* applications
forthcoming

Dated: January 28, 2021

*Counsel for Plaintiffs*