IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

Christian Labor Association; Kaski Inc.;           )
Nordic Group Inc.; Roen Salvage Co.; Luke Krhin;  )
Shawn Kunnari; and Dylan Smith,                   )
                                                  )
           Plaintiffs,                            )
                                                  )     0:21-cv-00227-DWF-LIB
      v.                                           )
                                                  )
City of Duluth; City of Cloquet; City of          )
Two Harbors; Western Lake Superior Sanitary       )
District; and Duluth Building and Construction     )
Trades Council,                                   )
                                                  )
           Defendants.                            )
_____ )


**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF
JOINT MOTION TO DISMISS THE COMPLAINT PURSUANT TO F.R.C.P.
12(b)(1) AND F.R.C.P. 12(b)(6)**


*\* See list of counsel, next page*

REBECCA ST. GEORGE, CITY
ATTORNEY, and
 *s/ Elizabeth A. Sellers*
Elizabeth A. Sellers (0395652)
Assistant City Attorney
411 West First Street, Rm. 440
Duluth, MN  55802
(218) 730-5281
esellers@duluthmn.gov

*Attorneys for Defendant City of Duluth*


GREENE ESPEL PLLP
 *s/Monte A. Mills*
Monte A. Mills (030458X)
Davida S. McGhee (0400175)
222 S. Ninth Street, Suite 220
Minneapolis MN 55402
(612) 373-0830
mmills@greeneespel.com
dwilliams@greeneespel.com

*Attorneys for Defendants City of
Cloquet, City of Two Harbors,
Western Lake Superior Sanitary District*

ANDREW, BRANSKY AND POOLE,
P.A.
 *s/ Timothy W. Andrew*
Timothy W. Andrew (227250)
302 West Superior Street, Suite 300
Duluth MN, 55802
(218) 722-1764
timandrew@duluthlawfirm.com

SHERMAN DUNN, P.C.
 *s/ Victoria L. Bor*
Victoria L. Bor  (D.C. #288852)
Jonathan D. Newman (D.C. #449141)
Robert D. Kurnick (D.C. #243683)
900 Seventh Street, N.W.  Suite 1000
Washington, D.C.  20001
(202)785-9300
bor@shermandunn.com
newman@shermandunn.com
kurnick@shermandunn.com

*Attorneys for Defendant Duluth Building
& Construction Trades Council*

# TABLE OF CONTENTS

A.  The Complaint Must be Dismissed under Rule 12(b)(1) for
    Lack of Jurisdiction ……………………………………………………... 1

    1.  *Plaintiffs Lack Standing.* …………………………………………… 1

        a.  *Employee Plaintiffs Lack Standing.*………………………………… 2

        b.  *CLA Lacks Standing.* ………………………………………………... 6

        c.  *Contractor Plaintiffs Lack Standing.* ………………………………7

        d.  *At Least One Plaintiff Must Have Standing to
            Pursue Each Claim.* ………………………………………………… 9

        e.  *Any Claims to Prospective Relief Based on Union Security
            Requirements are Moot.*………………………………………………9

B.  The Complaint Must be Dismissed under Rule 12(b)(6) for
    Failure to State any Claims for Which Relief Can be Granted. ……………… 15

    1.  *Plaintiffs have Failed to State a Claim for Violation
        of the Employees' First and Fourteenth Amendment Rights.* ………….. 15

    2.  *Plaintiffs have Failed to State a Claim for Violation of the
        Antitrust Laws.* ………………………………………………………… 16

        a.  *The Complaint does not State a Violation of the Sherman Act.* ... 16

        b.  *Plaintiffs do not Have Antitrust Standing.* ……………………... 20

            1)  Individual Employee Plaintiffs Lack Antitrust
                Standing. ………………………………………………………... 21

            2)  CLA Lacks Antitrust Standing …………………………… 22

            3)  Contractor Plaintiffs Lack Antitrust Standing ……..…… 22

        c.  *The PLAs are Shielded from Antitrust Scrutiny by the
            Nonstatutory Labor Exemption.* ………………………………… 23

Conclusion ………………………………………………………………………….... 26

## Cases

*Akers v. Maryland State Educ. Ass'n,*
  376 F. Supp. 3d 563 (D. Md. 2019), *aff'd*, 990 F.3d 375 (4th Cir. 2021).................... 14

*Amidax Trading Group v. S.W.I.F.T.,*
  671 F.3d 140 (2d Cir. 2011) ...................................................................................... 1

*Apex Hosiery Co. v. Leader,*
  310 U.S. 469 (1940) ...................................................................................... 20, 22-23

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..............................................................................................*passim*

*Associated Builders and Contractors v. City of Seward,*
  966 F.2d 492 (9th Cir. 1992) ................................................................................. 26

*Associated General Contractors of California v. Carpenters,*
  459 U.S. 519 (1983) ................................................................................................ 19

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................................. 1, 2, 4, 8, 17

*Bierman v. Dayton,*
  900 F.3d 570 (8th Cir. 2018) ................................................................................. 15

*Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Builders*
  *& Contractors of Mass./R.I. Inc.*, 507 U.S. 218 (1993) ........................... 21, 23, 24, 25

*Brown v. Pro Football, Inc.,*
  518 U.S. 231 (1996) ......................................................................................... 22, 25

*Carey v. Inslee,*
  364 F. Supp. 3d 1220 (W.D. Wash. 2019), *aff'd sub nom. Carey v.*
  *Washington Educ. Ass'n*, No. 19-35290, 2021 WL 1627041 (9th Cir.
  Apr. 27, 2021) ........................................................................................................ 14

*Carney v. Adams,*
  141 S.Ct. 493 (2020) ................................................................................................ 9

*Connell Constr. Co. v. Plumbers & Steamfitters Local 100,*
  421 U.S. 616 (1975) ....................................................................................... 19, 22-24

*Cook v. Brown*,
  364 F. Supp. 3d 1184 (D. Or. 2019), *aff'd sub nom. Che' S. Cook v. Brown*, No. 19-35191, 2021 WL 1627024 (9th Cir. Apr. 27, 2021) .................... 14, 25

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ........................................................................................ 9, 10

*Diamond v. Pennsylvania State Educ. Ass'n*,
  399 F. Supp. 3d 361 (W.D. Pa. 2019), *aff'd*, 972 F.3d 262 (3d Cir. 2020)................. 14

*Double D Spotting Serv., Inc. v. Supervalu, Inc.*,
  136 F.3d 554 (8th Cir. 1998) ............................................................................ 17, 18

*Five Smiths, Inc. v. Football Players*,
  788 F. Supp. 1042 (D. Minn. 1992) ................................................................... 17, 19

*Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ............................................................................................. 12

*Hamidi v. Serv. Emps. Int'l Union Loc. 1000*,
  386 F. Supp. 3d 1289 (E.D. Cal. 2019) .................................................................. 14

*Harnett v. Pa. State Educ. Ass'n*,
  963 F.3d 301 (3d Cir. 2020)............................................................................ 4, 13-14

*Hoekman v. Educ. Minn.*,
  No. 18-cv-01686, 2021 WL 533683 (D. Minn. Feb. 12, 2021) (Nelson, J.)................................................................................................................... 14

*Houston Chapter AGC*,
  143 NLRB 409 (1963), *enf'd,* 349 F.2d 449 (5th Cir. 1965)...................................... 22

*Hunt v. Washington State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) .......................................................................................... 6, 7

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
  797 F.3d 538 (8th Cir. 2015) ................................................................................. 18

*Janus v. AFSCME*,
  138 S.Ct. 2448 (2018).......................................................................................13-14

*Libertarian Party of Ark. v. Martin*,
  876 F.3d 948 (8th Cir. 2017) ............................................................................ 11, 13

*Lifewatch Servs., Inc. v. Highmark, Inc.*,
  902 F.3d 323 (3rd Cir. 2018) ................................................................................. 18

iii

*Little Rock Cardiology Clinic PA v. Baptist Health*,
    591 F.3d 591 (8th Cir. 2009) ...................................................................... 17

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    140 S.Ct. 2367 (2020) ................................................................................ 10

*Loescher v. Minn. Teamsters Pub. & L. Enf't Emps.' Union, Loc. No. 320*,
    441 F. Supp. 3d 762 (D. Minn. 2020) (Wright, J.) ...................................... 14

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555, 560 (1992) ......................................................................... 1, 5

*Mayer v. Wallingford-Swarthmore Sch. Dist.*,
    405 F. Supp. 3d 637 (E.D. Pa. 2019) ........................................................ 14

*Meat Cutters Local 576 v. Wetterau Foods, Inc.*,
    597 F.2d 133 (8th Cir. 1979) ..................................................................... 26

*Motokazie! Inc. v. Rice Cty.*,
    824 N.W.2d 341 (Minn. Ct. App. 2012) ..................................................... 12

*Northeastern Florida Chapter, AGC v. City of Jacksonville*,
    508 U.S. 656 (1993) .................................................................................... 8

*NYNEX Corp. v. Discon, Inc.*,
    525 U.S. 128 (1998) .................................................................................. 17

*Parents Involved in Community Schools v. Seattle School District No. 1*,
    551 U.S. 701 (2007) .................................................................................. 12

*Phelps-Roper v. City of Manchester*,
    697 F.3d 678 ........................................................................................ 11, 12

*Powell v. National Football League*,
    930 F.2d 1293 (8th Cir. 1989) ............................................................. 25, 26

*Renner v. New Ulm Police Relief Ass'n*,
    165 N.W.2d 225 (Minn. 1969) ................................................................... 11

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) .................................................................................. 16

*Sierra Club v. Robertson*,
    28 F.3d 753 (8th Cir. 1994) ......................................................................... 5

*Spokeo, Inc. v. Robins,*
136 S.Ct. 1540 (2016)..........................................................................1, 4, 5

*Steenerson v. Fontaine,*
119 N.W. 400 (Minn. 1908)......................................................... 12

*Texaco, Inc. v. Dagher,*
547 U.S. 1 (2006).......................................................................... 19

*The Branson Label, Inc. v. City of Branson,*
793 F.3d 910 (8th Cir. 2015) ......................................................... 2

*Town of Chester v. Laroe Estates, Inc.,*
137 S.Ct. 1645 (2017)................................................................. 10

*United States v. Concentrated Phosphate Export Assn.,*
393 U.S. 199 (1968)..................................................................... 12

*Uzuegbunan v. Preczewski,*
141 S. Ct. 792 (2021).................................................................... 8

*Willis Electric Co. v. Polygroup Macau Ltd.,*
437 F. Supp. 3d 693 (D. Minn. 2020) ......................................... 17

## Constitution and Statutes

U.S. Constitution

First Amendment...................................................................2, 4, 13, 16

Fourteenth Amendment................................................................ 9, 10, 15

National Labor Relations Act

Section 8(f), 29 U.S.C. § 158(f)............................................................ 21

Section 8(e), 29 U.S.C. § 158(e) ............................................... 21, 24, 25

Sherman Act ................................................................................. 16, 20

## Other Authorities

Federal Rules of Civil Procedure

Rule 8 .............................................................................................2, 4, 8

Rule 12(b)(1).................................................................................... 1, 26

Rule 12(b)(6).........................................................................................................15, 26

# DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
# JOINT MOTION TO DISMISS

## A.    The Complaint Must be Dismissed under Rule 12(b)(1) for Lack of Jurisdiction.

### 1.    *Plaintiffs Lack Standing.*

To pass constitutional muster, Plaintiffs' Complaint must "contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).  Instead, the Complaint must "possess enough heft to show the pleader is entitled to relief." *Id.* at 557 (internal quotation marks omitted).

In supporting their Motion to Dismiss, Defendants demonstrated that the Complaint fails plausibly to allege that any of the Plaintiffs has personally suffered an injury in fact, fairly traceable to Defendants' conduct, and likely to be redressed by a favorable decision, and that the Complaint therefore lacks the necessary "heft."  *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) (listing necessary elements of standing); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (the plaintiff bears the burden of establishing standing "in the same way as any other matter on which [it] bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation"); *Twombly,* 550 U.S. at 558 ("when the allegations in a complaint, . . . could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court"); and *Amidax Trading Group v. S.W.I.F.T.*, 671 F.3d 140, 145 (2d Cir. 2011) (to survive a federal defendant's Rule 12(b)(1) motion to dismiss challenging standing, the plaintiff must allege facts that

affirmatively and plausibly suggest that it has standing to sue). In response, Plaintiffs have recast their allegations, mischaracterized their own exhibits, and argued that their bare-bones allegations satisfy Rule 8's pleading requirements.

### a. *Employee Plaintiffs Lack Standing.*

The Complaint alleges that each of the Public Entities enforces a PLA that requires all employees working on a covered project "to 'become' and 'remain members' of a Council-affiliated union while working on" the project. (ECF No. 1 ¶ 23) Employee Plaintiffs claim to have standing because this membership requirement conflicts with their choice either to remain non-union or join the CLA. *Id.* ¶ 35.[1]

As a matter of law and fact,[2] none of the Defendants' PLAs required anyone to *join* any of the signatory unions. That is, even collective bargaining agreements stating that "membership" is a condition of employment require employees only to pay fees as a condition of employment, a circumstance that does not preclude anyone who has chosen not to be a union member or to join a different union from working on a covered project. (*See* ECF No. 26 (Memorandum of Law in Support of Defendant's Motion to Dismiss) at

---

[1] The Complaint also alleges that Plaintiffs have standing because the PLAs require employees to secure work on covered projects through the signatory unions' referral systems. ¶¶ 23, 35. Plaintiffs have clarified that their First Amendment claim is directed solely at the PLAs' union security requirement. (*See* ECF No. 39 at 16) The allegations about the referral system are therefore irrelevant to whether they have standing to pursue their constitutional claim. *See Ashcroft v. Iqbal,* 556 U.S. 622, 675 (2009) (standing analysis begins by "taking note of the elements a plaintiff must plead to state a claim").

[2] The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555 (internal citation omitted). Nor, in a factual 12(b)(1) motion like this one, are Plaintiffs' factual allegations to be accepted as true. *The Branson Label, Inc. v. City of Branson,* 793 F.3d 910, 915 (8th Cir. 2015).

9-11)  In response, the Employee Plaintiffs pivoted to claim they were injured not by a membership requirement, but instead "by the compulsory union payments that the PLAs admittedly required as a condition of working on the defendants' public works projects." (ECF No. 39 (Plaintiffs' Response to Defendants' Motion to Dismiss) at 7)  This reframing does nothing to advance their argument.

The Public Entities' PLAs did *not* all "admittedly" require employees to pay union fees. Instead, the only PLA in evidence that supports Plaintiffs' claim that, when they filed their Complaint, the Public Entities maintained PLAs with union security provisions, is the agreement signed by Cloquet.  (*See* ECF No. 1-2 (Cloquet PLA) at 4)  Of the other PLAs attached as exhibits to the Complaint, two were signed by Duluth, only one of which contained a union security clause.  (*Compare* ECF No. 1-1 (Duluth PLA) at 4 *with* ECF No. 1-4 (Duluth PLA))  Plaintiffs have provided no basis for concluding which, if either, of these agreements Duluth ever used on a public works project.  Moreover, contrary to Plaintiffs' allegations, Two Harbors' PLA required only current union members to maintain their membership, placing no such requirement on non-members like the Employee Plaintiffs.  (ECF No. 1-3 (Two Harbors PLA) at 4)  And despite the Complaint's reference to the PLA of the Western Lake Superior Sanitary District ("Sanitary District" or "WLSSD"), there is no Sanitary District PLA attached to the Complaint.  Instead, the only PLA in the record signed by the Sanitary District has no union security clause whatsoever.  (ECF No. 31-1 (WLSSD PLA))[3]  Accordingly, even if the Employee

_____

[3] Although Plaintiffs cite "ECF No. 1-4" as the "WLSSD PLA" in their Memorandum (ECF No. 39 at 24), that PLA lists "the City of Duluth" as the owner.

Plaintiffs' vague and conclusory allegations satisfied their pleading requirements, their only arguably viable claim that a PLA's union security provision caused them past harm would be against one defendant: Cloquet.

Even with respect to Cloquet, "[t]he *mere presence* of language in [the] contract[] causes no harm." *Hartnett v. Pa. State Educ. Ass'n,* 963 F.3d 301, 307 (3d Cir. 2020) (emphasis in original). Instead, to establish standing, the Employee Plaintiffs must allege a plausible "concrete and particularized" invasion of their First Amendment interests, *i.e.,* that the city's enforcement of the PLA actually affected them in a "personal and individual way." *Spokeo,* 136 S. Ct. at 1548 (to establish "injury in fact," plaintiffs must allege that they suffered an injury that is both "particularized," in that it "affect[s them] in a personal and individual way" and "concrete," *i.e.,* "'real', and not 'abstract'"). Plaintiffs assert that, at the pleading stage, they can meet that burden by merely alleging "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the violation," and that they "have done more than enough to get to discovery by describing the project labor agreements in detail and attaching them as exhibits." (ECF No. 39 at 23)

First, as just demonstrated, their description of the PLAs is demonstrably wrong. Second, although Rule 8's pleading requirements may not require detailed exactitude, the Rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,* 556 U.S. 622, 678-79 (2009) (quoting *Twombly,* 550 U.S. at 557). Plaintiffs complain they were "prevented from obtaining past work from the defendants on account of their [PLAs]." (ECF No. 1 ¶ 36) Surely, they do not need to "unlock the doors of

discovery" to allege in "concrete and particularized" terms how they have been injured. *See Iqbal,* 556 U.S. at 678 ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") Finally, to allege they were harmed by the PLAs' offending provisions, the Employee Plaintiffs would have to show they worked on a covered project and were compelled to pay fees, something the Complaint fails to do. (ECF No. 26 at 21)

The Employee Plaintiffs' claims to prospective relief similarly lack the "heft" necessary to show that, even when they filed their Complaint, they faced a risk of harm that was "actual and imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560. The PLAs are not self-executing laws on the Public Entities' books. Instead, the Public Entities use the PLAs, if at all, when they undertake qualifying public works projects. In the absence of any allegations that at the time Plaintiffs filed their Complaint, either Cloquet or Duluth was imminently planning a construction project on which it intended to enforce a PLA that, in fact, contained a union security provision, the Complaint contains nothing but conjectural and hypothetical claims of prospective harm, and thus, fails to satisfy the constitutional minimum of alleging "injury in fact." *Spokeo,* 136 S. Ct. at 1547.[4]

---

[4] Contrary to their argument, with respect to the claims to both past and future harm, the Employee Plaintiffs stand very much in the same shoes as the plaintiffs in *Sierra Club v. Robertson,* 28 F.3d 753, 758 (8th Cir. 1994), pointing to policies the Public Entities allegedly maintained, but which would harm the Employees' interests only if the Public Entities enforced the PLAs' union security provisions on projects on which the Employee Plaintiffs worked.

The Employee Plaintiffs have therefore failed to establish standing to pursue their claims.

### b. *CLA Lacks Standing.*

The Christian Labor Association ("CLA") claims to have standing because the PLAs prohibit its members "from working on defendants' public-works projects unless they renounce their membership in the CLA and join a Council-affiliated union." (ECF No. 1, ¶ 29) CLA further claims it qualifies for "associational standing" because, *inter alia,* "the litigation is germane to the organization's purpose[ . . . of] seek[ing] to maximize work opportunities for its members and the contractors that employ them." *Id.* ¶ 30. Because the PLAs do *not* require CLA's members to "renounce their membership in the CLA and join a Council-affiliated union" to work on a covered project, Plaintiffs now assert that the PLAs required CLA members to pay money to the unions, which "is all that is needed to show that the CLA's members (and the CLA itself) had standing." (Pls' Resp. at 5)

As Plaintiffs acknowledge, to establish associational standing, CLA must show (1) its members would themselves have standing, (2) CLA is seeking to protect an interest germane to its organizational purpose, and (3) participation by individual CLA members in the lawsuit is not required. Complaint ¶ 28 (quoting *Hunt v. Washington State Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977)). The members' standing therefore is *not* "all that is needed" to establish CLA's standing. Instead, CLA must also demonstrate why, when it filed the Complaint, the requirement in some of the PLAs that employees pay fees to Council-affiliated unions while working on a covered project implicated the

organization's interest in "maximizing [its members'] work opportunities," a demonstration CLA has not even attempted. In any event, as just demonstrated, the Complaint fails to establish that CLA's members have "standing to sue in their own right." *Hunt,* 432 U.S. at 343. Having failed to meet two prongs of the *Hunt* test, CLA has failed to establish associational standing.

### c. *Contractor Plaintiffs Lack Standing.*

The Contractor Plaintiffs fail to identify any specific project covered by any of the PLAs on which they bid, or intended to bid, which is a fatal defect. Instead, they allege they have standing because they are ineligible to work on any covered project unless they recognize a signatory union as their employees' exclusive bargaining representative and hire through the union's job-referral system, Complaint ¶ 32; and that because of these provisions, the PLAs have prevented them from obtaining past work, *id.* ¶ 34, and will continue to injure them, unless defendants are enjoined from enforcing the agreements, *id.* ¶ 33.

In response to Defendants' demonstration that the Complaint's allegations are insufficiently concrete and particularized to support their claim for damages and too conjectural and hypothetical to support their claim for prospective relief, Plaintiffs argue that their allegation that the PLAs have prevented them from obtaining past work "indisputably establishes a past 'injury in fact,'" which "can be redressed by an award of nominal or compensatory damages," and that their allegation that they are "able and ready" to apply for future contracts suffices to support a claim for prospective relief. (ECF No. 39 at 10-11) While "nominal damages provide the necessary redress for a completed

violation of a legal right," the Supreme Court has made clear "[t]his is not to say that a request for nominal damages guarantees entry to court." *Uzuegbunan v. Preczewski,* 141 S. Ct. 792, 802 (2021). Instead, "[i]t remains for the plaintiff to establish the other elements of standing (such as particularized injury)." *Id.* Contractor Plaintiffs have not pled *any* particularized injury. Instead, like their Employees, they have asserted, in broad, general terms, that all four of the Public Entities have harmed them by enforcing their PLAs on unidentified projects – projects that, if the Contractor Plaintiffs had, in fact, intended to bid, they could easily identify without recourse to discovery. By the same token, without identifying specific projects on which any of the Public Entities were, at the time plaintiffs filed their complaint, planning to use their PLAs, the Contractors have failed to allege that, absent prospective relief, they face imminent risk of harm.

Rule 8 "demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." *Iqbal,* 556 U.S. at 678. Yet, as just described, that is all the Contractor Plaintiffs have asserted. (ECF No. 39 at 10-11) While Plaintiffs are not required to provide the same level of detail at the pleading stage as when defending a motion to for summary judgment, they are required to do more than "tender [these kinds of] naked assertions devoid of further factual enhancement." *Iqbal,* 556 at 678 (quoting *Twombly,* 550 U.S. at 557). Thus, although *Northeastern Florida Chapter, AGC v. City of Jacksonville,* 508 U.S. 656, 668 (1993), involved a summary judgment motion, the decision illustrates the kinds of facts the Contractors would have to allege to make it plausible that the Public Entities took some "concrete and particularized" action that harmed them by, for example, using a PLA on specific project on which one or more of the Contractor Plaintiffs would have bid

if offending provisions had not precluded them from doing so. And *Carney v. Adams*, 141 S. Ct. 493 (2020), illustrates the kinds of facts the Contractors would need to allege to support their assertion that they are "able and ready" to bid for projects: *e.g.,* that one or more of the Contractors had previously performed work in the area and was equipped to bid for a project that each of the Public Entities was imminently planning to undertake.

The Contractor Plaintiffs have provided no factual predicate whatsoever for their "unadorned" accusations that they have suffered, and will continue to suffer, injury in fact by Defendants' enforcement of their PLAs. Yet, as is true for the Employee Plaintiffs, the Contractors are uniquely positioned to provide a modicum of detail regarding their entitlement to relief. Having instead failed to do anything more than put forward "unadorned, the-defendants-unlawfully-harmed-me accusation[s]," *Iqbal,* 556 U.S. at 678, the Contractor Plaintiffs have failed to establish standing to pursue their claims.

### d. At Least One Plaintiff Must Have Standing to Pursue Each Claim.

The Complaint contains two distinct claims: That Defendants have violated the First and Fourteenth Amendment, and that they have violated the antitrust laws. (ECF No. 1 ¶¶ 37-43 (Claim for Relief No. 1); ¶¶ 44-50 (Claim for Relief No. 2)) Plaintiffs assert that because both claims seek "the same prospective relief against defendants: a declaratory judgment and an injunction against the continued enforcement of the [PLAs], . . . only *one* of the plaintiffs in this case needs Article III standing" to maintain this litigation. (ECF No. 39 at 20) (Emphasis in original). This assertion is simply incorrect.

"[S]tanding is not dispensed in gross." *Davis v. Fed. Election Comm'n,* 554 U.S. 724, 734 (2008) (quoting *Lewis v. Casey*, 518 U. S. 343, 358, n. 6 (1996) (internal quotation

marks omitted). Rather, "a plaintiff must demonstrate standing for each claim he seeks to press *and* for each form of relief that is sought." *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (internal quotation marks and citation omitted; emphasis added). The Contractor Plaintiffs make no claim that the PLAs violate their constitutional rights. Accordingly, even if they had established standing to pursue their antitrust claims – which they have not – they could not press the Employees' First and Fourteenth Amendment claims. Nor would the Employee Plaintiffs have standing to pursue the Contractors' antitrust claims, even if they had established standing to pursue their constitutional claims – which they have not. Instead, the Court must dismiss any *Plaintiff* who lacks standing and any *claim* that no Plaintiff has standing to pursue. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,* 140 S. Ct. 2367, 2379 n. 6 (2020) ("at least one party must demonstrate Article III standing for each *claim* for relief." (Emphasis added.)); *Town of Chester v. Laroe Estates, Inc.,* 137 S. Ct. 1645, 1651 n. 3 (2017) ("[A] case or controversy as to one claim does not extend the judicial power to *different* claims or forms of relief." (quoting Respondents' Brief; emphasis in original)).

### e. *Any Claims to Prospective Relief Based on Union Security Requirements are Moot.*

The record shows that none of the Public Entities' PLAs currently requires employees on covered projects to join or financially support a union as a condition of employment. In fact, all of the PLAs currently state that "nothing in this Agreement requires employees to join a union or pay dues to a union as a condition of working on the covered project." (ECF No. 26 at 11-15; *see* ECF Nos. 27-1, 29-1, 30-1, 31-1) Because

"changed circumstances [have] already provid[ed] the requested relief," any claims to prospective relief against the enforcement of compelled payments to the union are now moot. (ECF No. 26 at 29-32, quoting *Libertarian Party of Ark. v. Martin,* 876 F.3d 948, 951 (8th Cir. 2017) (internal citation omitted)) Indeed, Cloquet's claims regarding mootness have since been strengthened because, as Defendants notified the Court and the parties on May 6, 2021, the Cloquet's City Council repealed the provision in its City Code that required PLAs on the City's construction projects. (*See* ECF No. 38 (Second Declaration of Tim Peterson))[5] Based on the record before this Court, Plaintiff's claims seeking injunctive relief and a declaration that the PLAs unconstitutionally compel union membership and payment of fees are moot.

Plaintiffs respond by arguing that although "statutory changes that discontinue a challenged practice are usually enough to render a case moot," that principle does not apply to "unilateral change[s]" to "municipal polic[ies]." (ECF No. 39 at 15, 17) This contention defies Eighth Circuit precedent. *See Phelps-Roper v. City of Manchester,* 697 F.3d 678, 687 (8th Cir. 20120 (en banc) (finding challenges to ordinances amended by a city council moot). Moreover, it minimizes the significance of the city councils' authority. Within their municipal boundaries, city council resolutions are legislative acts constituting local laws, and are thus the local equivalent of state legislation. *See*, *e.g*, *Renner v. New Ulm Police Relief Ass'n*, 165 N.W.2d 225, 230 (Minn. 1969) (holding that resolutions duly

---

[5] Plaintiffs had notice of Cloquet's repeal ordinance before filing their response memorandum on May 10, but failed to address it in their response.

adopted by city council constitute laws or ordinances under Minnesota law); *Steenerson v. Fontaine*, 119 N.W. 400, 401 (Minn. 1908) ("A resolution has ordinarily the same effect as an ordinance, as both are legislative acts."); *Motokazie! Inc. v. Rice Cty.*, 824 N.W.2d 341, 346 (Minn. Ct. App. 2012) ("An ordinance is a local law.") (citing *Oakman v. City of Eveleth*, 203 N.W. 514, 516 (Minn. 1925)).  Contrary to Plaintiffs' assertion, a "statutory change" by a state legislature is *not* the exclusive route for a government body to moot a controversy.  Local government bodies may moot a controversy by voting to change policies within their jurisdictional boundaries, *Phelps-Roper,* 697 F.3d at 687, which is precisely what happened here.

Parents Involved in Community Schools v. Seattle School District No. 1*, 551 U.S. 701 (2007), is not to the contrary. There, the Seattle School District "ceased using the racial tiebreaker *pending the outcome of this litigation*." *Id*. at 719 (emphasis added). Here, none of the Public Entities conditioned its amendments on the outcome of this litigation.  (*See* ECF Nos. 27, 29, 30 and 31)  Nor did the Building Trades make its support for the amendments contingent on this litigation.  (*See* ECF Nos. 28, 28-1, 28-2, 28-3)

Plaintiffs' reliance on *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.,* 528 U.S. 167 (2000), and *United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199 (1968), is similarly misplaced.  (ECF No. 39 at 12-13)  Both cases involve challenges to conduct by *private* parties, and both stand for the unremarkable proposition that "a defendant's voluntary cessation of a challenged practice ordinarily does not deprive a federal court of its power to determine the legality of the practice," *Friends of the Earth,* 528 U.S. at 169-70, a principle the Eighth Circuit has embraced, *Libertarian*

*Party of Ark.,* 875 F.3d at 951. However, notwithstanding that general principle, the Eighth Circuit has held that, "statutory changes that discontinue a challenged practice are usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed," *id.,* a proposition Plaintiffs do not dispute. (ECF No. 39 at 11)

Plaintiffs also argue that the amendments cannot moot "the entire lawsuit" because they are seeking to enjoin the hiring hall requirements and are seeking damages for past enforcement of the PLAs. (ECF No. 39 at 15) To be clear, Defendants are contending that the constitutional challenges to PLAs' prospective enforcement of union security requirements are moot. Plaintiffs did not respond to Defendants' arguments regarding the constitutionality of the hiring hall requirements, and instead limited their constitutional claim to the alleged union security requirements in the PLAs – the claim that is moot. (*See* ECF No. 39 at 21) ("The plaintiffs' First Amendment Claim attacks the requirement that employees join or pay a Council-affiliated union as a condition of working on the defendants' public works projects.") That leaves Plaintiffs' antitrust claims, which although lacking merit, Defendants do not contend are moot.

Even when a change is effected by private parties, and not – as here – through legislative action, courts have recognized "an especially strong case of mootness" in cases involving First Amendment challenges to union dues requirements when the union voluntarily stopped charging agency fees in the wake of *Janus v. AFSCME,* 138 S. Ct. 2448 (2018). (*see* ECF No. 1 ¶ 38 (citing *Janus* as basis for constitutional claim)) *Hartnett v. Pa. State Educ. Ass'n,* 963 F.3d 301, 307 (3d Cir. 2020). *Janus* involved the novel

circumstance in which the U.S. Supreme Court reversed decades of precedent by prohibiting public employers from requiring agency fees. When a public sector union thereafter ceased charging agency fees, the Third Circuit in *Hartnett* found "no reasonable likelihood that the unions will try to collect agency fees from the teachers ever again." 963 F.3d at 307. Judges in this district have similarly dismissed requests for injunctive and declaratory relief as moot after *Janus* when defendants "ceased deducting" fees from nonconsenting employees' paychecks and "averred that [p]laintiffs will not be required to pay union fees unless they voluntarily rejoin their claims." *Hoekman v. Educ. Minn.*, No. 18-cv-01686, 2021 WL 533683, at *10 (D. Minn. Feb. 12, 2021) (Nelson, J.); *see also Loescher v. Minn. Teamsters Pub. & L. Enf't Emps.' Union, Loc. No. 320*, 441 F. Supp. 3d 762, 771-72 (D. Minn. 2020) (Wright, J.).[6]

---

[6] Courts in other jurisdictions have reached similar conclusions about mootness. *See Mayer v. Wallingford-Swarthmore Sch. Dist.*, 405 F. Supp. 3d 637, 642 (E.D. Pa. 2019) ("There is no continuing conduct for the Court to declare unconstitutional, and an injunction that simply directs a defendant to obey the law is improper."); *Diamond v. Pennsylvania State Educ. Ass'n*, 399 F. Supp. 3d 361, 385 (W.D. Pa. 2019), *aff'd*, 972 F.3d 262 (3d Cir. 2020) ("Plaintiffs' claims for declaratory and injunctive relief are moot due to the Supreme Court's decision in *Janus* and Union Defendants' undisputed compliance therewith."); *Hamidi v. Serv. Emps. Int'l Union Loc. 1000*, 386 F. Supp. 3d 1289, 1298 (E.D. Cal. 2019) ("because the allegedly wrongful behavior could not reasonably be expected to recur, the court will dismiss plaintiffs' claims for prospective relief as moot"); *Akers v. Maryland State Educ. Ass'n*, 376 F. Supp. 3d 563, 572 (D. Md. 2019), *aff'd*, 990 F.3d 375 (4th Cir. 2021) ("Plaintiffs' request for injunctive relief is moot because the union's communications are reliable evidence of a permanent shift in policy and the challenged conduct cannot be reasonably expected to recur, and declaratory relief is moot because there is no immediate legal controversy."); *Carey v. Inslee*, 364 F. Supp. 3d 1220, 1226 (W.D. Wash. 2019), *aff'd sub nom. Carey v. Washington Educ. Ass'n*, No. 19-35290, 2021 WL 1627041 (9th Cir. Apr. 27, 2021) (dismissing claims for prospective injunctive relief and declaratory relief because "the circumstances of WEA's policy change moot the controversy even if viewed

Although Defendants do not concede that *Janus* applies in this case, they do have a significant interest in avoiding further litigation over this issue. (*See* ECF No. 26 at 31 and n. 6, listing cases making identical claims). There is accordingly "no reasonable likelihood" that the Public Entities will reinstate the union security provisions in their PLAs. With the clarifications by Duluth and Two Harbors that, like the Sanitary District, employees working on covered projects have no obligation to pay fees to the signatory unions, and the action by Cloquet eliminating its PLA requirement altogether, Plaintiffs' constitutional claims to prospective relief against the PLAs' former union security provisions have been rendered moot.

**B.     The Complaint Must be Dismissed under Rule 12(b)(6) for Failure to State any Claims for Which Relief Can be Granted.**

   *1.     Plaintiffs have Failed to State a Claim for Violation of the Employees' First and Fourteenth Amendment Rights.*

The Complaint alleges that the PLAs violate the Employee Plaintiffs' rights not to "join or associate with a union." (ECF No. 1 ¶¶ 37-41) Defendants have explained that insofar as the Employee Plaintiffs appeared to be asserting the PLAs violated their association rights by requiring them to seek employment through the unions' referral systems, the claim was actually an attack on the union's ability to act as their exclusive collective bargaining agent, a requirement that does not "impinge on the right of association." *Bierman v. Dayton,* 900 F.3d 570, 575 (8th Cir. 2018); *see* ECF No. 26 at 33-

as voluntary"); *Cook v. Brown*, 364 F. Supp. 3d 1184, 1188 (D. Or. 2019), *aff'd sub nom. Che' S. Cook v. Brown*, No. 19-35191, 2021 WL 1627024 (9th Cir. Apr. 27, 2021) (dismissing requests for prospective injunctive relief and declaratory relief as moot).

34. Plaintiffs now concede that "there is nothing in Claim No. 1 that criticizes exclusive representation or suggests that the PLAs violate the employee plaintiffs' rights by forcing them to accept a Council-affiliated union as their bargaining representative." (ECF No. 39 at 21) Instead, they have made clear their constitutional claim solely "attacks the requirement that employees join or pay a Council-affiliated union as a condition of working the defendants' public works projects." *Id.* Because those claims must be dismissed, both because Plaintiffs lack standing and because subsequent events have rendered them moot, no First Amendment claim remains in this case.[7]

### 2. *Plaintiffs have Failed to State a Claim for Violation of the Antitrust Laws.*

### a. *The Complaint does not State a Violation of the Sherman Act.*

Defendants have explained that Plaintiffs had not adequately alleged a violation of the Sherman Act, because the Complaint did not allege either a restriction on competition or describe the relevant market within which competition was purportedly affected. (ECF No. 26 at 34-37) In response, Plaintiffs argue that (1) Defendants are demanding more than the Rules of Civil Procedure require; (2) the Complaint does allege a restriction on

---

[7] To be clear, even if Plaintiffs meant to allege that it violates the Constitution to require them to "associate" with union members in the referral systems, that allegation would similarly fail to state a claim. The Constitution protects freedom of association "in two distinct senses" – intimate association and expressive association (*i.e.,* the right to associate for the purpose of engaging in activities protected by the constitution). *Roberts v. U.S. Jaycees,* 468 U.S. 609, 618 (1984). Requiring employees to "associate" with a union by using its hiring hall does not implicate their "association" rights in either of those senses. *See id.* at 638 (O'Connor, J., concurring) (a state "may compel association with a union for the commercial purposes of engaging in collective bargaining, administering labor contracts, and adjusting employment-related grievances").

competition; and (3) the PLAs constitute *per se* unlawful price fixing agreements.  (ECF No. 39 at 17-20)  None of these arguments has merit.

Although Plaintiffs contend that they "have done more than enough . . . by describing the project labor agreements in detail and attaching them as exhibits," (ECF No. 39 at 18), describing and attaching the PLAs plainly is not enough.  An antitrust plaintiff must allege "[t]he essential elements of a private antitrust claim" and it must do so "in more than vague and conclusory terms to prevent dismissal on a defendant's [Rule] 12(b)(6) motion."  *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 558 (8th Cir. 1998).  The essential elements of a private antitrust claim – elements a plaintiff must plead to avoid dismissal – include both a restriction on competition and the relevant market within which that restriction allegedly occurred.  *See NYNEX Corp. v. Discon, Inc.,* 525 U.S. 128, 135 (1998) ("the plaintiff here must allege . . . harm . . .  to the competitive process itself"); *Little Rock Cardiology Clinic Pa. v. Baptist Health,* 591 F.3d 591, 596 (8th Cir. 2009) (Plaintiff "has the burden of alleging a relevant market in order to state a plausible antitrust claim."); *Double D Spotting,* 136 F.3d at 560 (same); *Willis Electric Co. v. Polygroup Macau Ltd.,* 437 F. Supp. 3d 693, 707 (D. Minn. 2020) ("a plaintiff must allege . . . that the agreement unreasonably restrained trade under either a *per se* rule of illegality or a rule of reason analysis").  In *Five Smiths, Inc. v. Football Players,* 788 F. Supp. 1042, 1052 (D. Minn. 1992), for example, the court dismissed the antitrust complaint because of its "failure to plead either a relevant market or an injury to competition or [to] the market."

Plaintiffs cite *Lifewatch Servs., Inc. v. Highmark, Inc.*, 902 F.3d 323 (3rd Cir. 2018)*,*

for the proposition that they need not describe their claim until discovery is complete. But

the *Lifewatch* court held that, "[t]o state a Section 1 claim, [plaintiff] must also plead that

the [defendant's] agreement has unreasonably restrained trade" and explained that "[a]

unreasonable restraint is one that inhibits competition in the relevant market." *Id.* at 335.

The *Lifewatch* court also observed that, "[t]he parties do not dispute that Lifewatch must

allege a relevant market." *Id.* at 337.

Plaintiffs' are not entitled to conceal the basis (or the lack of any basis) for their

claim, take discovery, and then "tailor[ their] legal theories to the discovered facts." (ECF

No. 39 at 18) As the Eighth Circuit observed in *Insulate SB, Inc. v. Advanced Finishing

Sys., Inc.,* 797 F.3d 538, 543 (8th Cir. 2015), "[t]he federal courts have been reasonably

aggressive in weeding out meritless antitrust claims at the pleading stage." *See also

Twombly,* 550 U.S. at 558 (cautioning against permitting discovery "when there is no

reasonable likelihood that the plaintiffs can construct a claim from the events related in the

complaint").

Plaintiffs do not contend that they have alleged a relevant market, but instead

contend that they have alleged "that the PLA's hindered competition" and did so "by

preventing nonunion contractors and their employees from competing with Council-

affiliated contractors in their effort to obtain work on defendants' construction projects."

(ECF No. 39 at 20.) Yet the PLAs themselves show that all contractors and all workers

are entitled to seek work on defendants' construction projects on exactly the same terms.

The only thing preventing Plaintiffs from seeking that work is their own unwillingness to

accept those terms. As Defendants explained at length, an objection to terms one considers unfair or onerous is not a complaint that competition has been restrained. (ECF No. 26 at 35-36)

In an effort to avoid dismissal, Plaintiffs offer a new theory – one not alleged in the Complaint – that the PLAs are *per se* unlawful price fixing agreements because they require all contractors to provide employees with union-negotiated wages and benefits.[8] (ECF No. 39 at 19-20)    Plaintiffs offer little, other than the price-fixing label, to support this argument.    "Of course, the plaintiffs' attachment of the *per se* label is simply inadequate in itself to sustain the complaint; the defendants' alleged activity must be scrutinized to determine whether such a characterization is appropriate." *Five Smiths,* 788 F. Supp. at 1045.

A *per se* unlawful price-fixing agreement is an agreement "between two or more competitors." *Texaco, Inc. v. Dagher,* 547 U.S. 1, 5 (2006). Agreements between entities that do not compete with each other do not qualify. *Id.* ("These cases do not present such an agreement, however, because Texaco and Shell Oil did not compete with one another . . . ."). The PLAs are agreements between project owners and labor organizations, not agreements among competitors. Although the PLAs impose a requirement on each successful bidder to adopt the agreement, that requirement does not make the PLAs into

---

[8] "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Five Smiths,* 788 F. Supp. at 1050 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)); *see Associated General Contractors of California v. Carpenters,* 459 U.S. 519, 529 (1983) ("It is not, however, proper to assume . . . that the defendants have violated the antitrust laws in ways that have not been alleged.").

agreements reached among competitors. There is accordingly no basis for characterizing the PLAs as *per se* unlawful.

No court, moreover, has ever characterized a union agreement imposing uniform wages and benefits as a *per se* violation of the Sherman Act. That proposition would be impossible to reconcile with the Supreme Court's decision in *Apex Hosiery Co. v. Leader,* 310 U.S. 469, 503 (1940), in which the Court observed that "an elimination of price competition based on differences in labor standards is the objective of any national labor organization. But *this effect on competition has not been considered to be the kind of curtailment of price competition prohibited by the Sherman Act*." *Id.* at 503-04 (emphasis added); *see also Connell Constr. Co. v. Plumbers & Steamfitters Local 100,* 421 U.S. 616, 622 (1975) ("Union success in . . . standardizing wages ultimately will affect price competition among employers, but the goals of federal labor law never could be achieved if this effect on business competition were held a violation of the antitrust laws."). Plaintiffs' novel, newly-minted, and unsupported theory cannot therefore prevent dismissal of their antitrust claims.

### b.    *Plaintiffs do not Have Antitrust Standing.*

Plaintiffs' response fails to rebut Defendants' showing that (1) the individual Employee Plaintiffs lack antitrust standing because their alleged injury – compliance with union security and job referral provisions – is not the type of injury the antitrust laws are intended to prevent; (2) the CLA lacks associational standing because its members lack standing; and (3) the Contractor Plaintiffs lack antitrust standing because any economic injury they suffered resulted from their own refusal to work under what they considered to

be the unfair and onerous terms of the PLAs, rather than from any restrictions on competition.  (ECF No. 26 at 37-42)

### i. Individual Employee Plaintiffs Lack Antitrust Standing.

The Employee Plaintiffs lack antitrust standing because they are not market participants and because the antitrust laws were not enacted to protect employees from union security and job referral requirements, both of which are lawful under § 8(f) of the National Labor Relations Act, 2 U.S.C. § 158(f).  (ECF No. 26 at 38-39)  Plaintiffs respond that § 8(f) is immaterial because it applies only to agreements between labor organizations and private employers engaged in the construction industry.  (ECF No. 39 at 21-22)  That response misses the point in two ways.

First, it ignores the fact that the PLAs require contractors working under the PLAs to become parties to those agreements.  (ECF No. 1-1at 12; ECF No. 1-2 at 11; ECF No. 1-3 at 13-14; ECF No. 1-4 at 2)  Because those contractors are private employers engaged in the construction industry, Section 8(f) applies to and protects the union security and job referral provisions of any agreement between those contractors and the Duluth Building and Construction Trades Council.  *See Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I. Inc.*, 507 U.S. 218, 230 (1993) ("*Boston Harbor*") ("It is undisputed that the Agreement between Kaiser and BCTC is a valid labor agreement under §§ 8(e) and (f).")  Second, even if § 8(f) were inapplicable, the relevant point is that its enactment shows that Congress did not intend to prohibit, either in the private or public sector, the type of agreements protected by that section.  *Id.* (public sector PLA "promotes the legislative goals that animated the passage of the §§ 8(e) and (f)

exceptions for the construction industry"). The Employee Plaintiffs therefore lack antitrust standing.

### ii. CLA Lacks Antitrust Standing.

Plaintiffs do not dispute that the CLA's standing depends entirely on the standing of the individuals and that, if the individual plaintiffs lack antitrust standing, so does the CLA. (ECF No. 39 at 21-23) Because the individual employee plaintiffs lack standing, the CLA lacks associational standing.

### iii. Contractor Plaintiffs Lack Antitrust Standing.

The Contractor Plaintiffs lack antitrust standing because the Complaint does not allege a restriction on competition among contractors. Any economic loss that they suffered arose, not from any restriction on competition, but from the plaintiffs' objections to working under the terms of the PLAs. (ECF No. 26 At 41-42) The plaintiffs respond that the PLAs "place non-union contractors at a *competitive disadvantage*" by requiring them to obtain employees from union hiring halls and provide their employees with union-negotiated wages and benefits. (ECF No. 39 at 22-23, emphasis in original)

Plaintiffs' contention that the PLAs, by their terms, place anyone at a competitive disadvantage is simply incorrect. The PLAs apply equally to all contractors, union and nonunion. They permit *all* contractors to bid on the work and require *all* contractors to pay the same union-negotiated wages, provide the same union-negotiated benefits, and use the same union-negotiated referral systems. That equality of treatment can hardly be characterized as imposing a competitive disadvantage on anyone.

But the more fundamental flaw in plaintiffs' argument is their contention that an agreement precluding competition based on terms and conditions of employment inflicts an antitrust injury.  If, as the Supreme Court stated in *Apex Hosiery* and *Connell,* the antitrust laws do not prohibit the "elimination of price competition based on differences in labor standards," *Apex,* 310 U.S. 503-04; *Connell,* 421 U.S. 622, then a contractor compelled to meet the labor standards required of all other contractors has not suffered an antitrust injury and lacks antitrust standing.

        *c.*       *The PLAs are Shielded from Antitrust Scrutiny by the Nonstatutory Labor Exemption.*

Defendants have explained that the nonstatutory labor exemption is based on the "strong labor policy favoring the association of employees to eliminate competition over wages and working conditions," *Connell,* 421 U.S. at 622, and protects conduct related to "the lawful operation of the bargaining process," *Brown v. Pro Football, Inc.,* 518 U.S. 231, 250 (1996).  (ECF No. 26 at 42-43)  Defendants also explained that *Boston Harbor* supports application of the exemption because, in that case, the Supreme Court examined a PLA similar in content to the PLAs at issue here and concluded that such PLAs, mandated by public entities, effectuate the policies underlying those parts of the NLRA applicable to the construction industry.  507 U.S. at 230-31.

Plaintiffs respond that "*Connell* clearly and unequivocally rejects the defendants' efforts to extend the non-statutory labor exemption to their project labor agreements" and that *Boston Harbor* "has nothing to say about . . . the scope of the non-statutory labor

exemption," which, according to the plaintiffs, applies only to collective bargaining agreements between labor organizations and private employers. (ECF No. 39 at 23-30)

Plaintiffs' argument ignores the obvious differences between the PLAs and the agreement at issue in *Connell.* The agreement in *Connell* broadly prohibited general contractors from subcontracting work, anywhere in the union's jurisdiction, to employers that did not already have a contract with the union. 421 U.S. at 620. As the Court observed, these agreements "indiscriminately excluded nonunion subcontractors from a portion of the market, even if their competitive advantages were not derived from substandard wages and benefits." *Id.* at 623. The agreement thus imposed "a direct restraint on the business market . . . that would not follow naturally from the elimination of competition over wages and working conditions." *Id.* at 625. And, because that broad subcontracting agreement also violated Section 8(e) of the NLRA, 29 U.S.C. § 158(e), which prohibits agreements by an employer to refrain from doing business with any other person, the Court rejected the argument that application of the nonstatutory exemption was needed to reconcile antitrust law and labor policy. *Id.* at 622-625.

The PLAs in this case, by contrast, do not exclude anyone from the market. They permit any contractor to bid to work on a covered project and impose the same conditions on all successful bidders. In complaining that the PLAs would require all contractors to provide the same wages, benefits, and working conditions, Plaintiffs are complaining about "the elimination of competition over wages and working conditions," which, according to *Connell,* the nonstatutory labor exemption was intended to permit. And, unlike the subcontracting agreements in *Connell,* the agreements here are not the type prohibited by

24

Section 8(e) of the NLRA. *See Boston Harbor,* 507 U.S. at 230 ("The 1959 amendment to [Section 8(e)] permits a general contractor's prehire agreement to require an employer not to hire other contractors performing work on that particular project site unless they agree to become bound by the terms of that labor agreement."). *Connell* therefore does not establish that the nonstatutory exemption is inapplicable in this case.

Plaintiffs also argue that, because *Boston Harbor* was not an antitrust case, it has "nothing to say" about the scope of the nonstatutory labor exemption. The purpose of the nonstatutory exemption is to reconcile the antitrust laws and national labor policy, *Brown,* 518 U.S. at 237, and the Supreme Court in *Boston Harbor* had quite a bit to say about national labor policy. The Court stated in *Boston Harbor* that permitting public entities to "participate freely in the marketplace" and enter into PLAs – "[p]rehire agreements . . . providing for union recognition, compulsory union dues or equivalents, and mandatory use of union hiring halls," 507 U.S. at 230 – "promotes the legislative goals that animated the passage of the §§ 8(e) and (f) exceptions for the construction industry." *Id.* If, as the Supreme Court stated, PLAs with public entities promote national labor policy, the antitrust laws cannot be read to prohibit such agreements.

Plaintiffs argue that the nonstatutory exemption cannot be applied here because it "shields only collective bargaining activity from antitrust scrutiny" and "only collective bargaining activities *in the private sector.*" (ECF No. 39 at 26-28, emphasis in original) No court, however, has read the exemption that narrowly. As the Eighth Circuit has stated, "[a] collective bargaining agreement is not always essential to finding that challenged employment terms fall within the labor exemption." *Powell v. National Football League,*

930 F.2d 1293, 1301 (8th Cir. 1989). And in several cases, the exemption has been applied to activities other than collective bargaining. In *Brown,* for example, the Supreme Court applied the exemption to an agreement among football clubs to establish a developmental squad of substitute players after the players' union had rejected their proposal on that subject. 518 U.S. at 235-242. In *Meat Cutters Local 576 v. Wetteruau Foods, Inc.,* 597 F.2d 133 (8th Cir. 1979), the Eighth Circuit applied the exemption to an agreement between two companies under which one would provide strike replacements to the other. *Id.* at 135-37. And in *Powell,* the Eighth Circuit applied the exemption to a rule restricting player free agency, a rule maintained by employers long after their collective bargaining agreements had expired. 930 F.2d at 1299-1302.

Plaintiffs are also incorrect in stating that the nonstatutory labor exemption applies only to private employers. In *Associated Builders and Contractors v. City of Seward,* 966 F.2d 492 (9th Cir. 1992), the court held that the nonstatutory exemption applied to an agreement between a union and a city government. The court acknowledged that the city was not an employer under the NLRA but concluded that "it would [nevertheless] be inconsistent to approve such an agreement under labor law, but strike it down under antitrust law." *Id.* at 498-99.

The relevant point is that PLAs with both public and private entities are important and lawful and, as the Supreme Court recognized in *Boston Harbor,* effectuate important aspects of national labor policy, particularly in the construction industry. Accommodating that policy requires the Court to apply the nonstatutory labor exemption to those agreements.

# CONCLUSION

For the reasons set forth in Defendants' opening memorandum and this reply, Plaintiffs' Complaint should be dismissed under Rule 12(b)(1) for failure to establish this Court's jurisdiction and under Rule 12(b)(6) for failure to state any claim upon which relief may be granted.

Respectfully submitted,

REBECCA ST. GEORGE, CITY
ATTORNEY, and
 *s/ Elizabeth A. Sellers*
Elizabeth A. Sellers (0395652)
Assistant City Attorney
411 West First Street, Rm. 440
Duluth, MN  55802
(218) 730-5281
esellers@duluthmn.gov

*Attorneys for Defendant City of Duluth*


GREENE ESPEL PLLP
 *s/Monte A. Mills*
Monte A. Mills (030458X)
Davida S. McGhee (0400175)
222 S. Ninth Street, Suite 220
Minneapolis MN 55402
(612) 373-0830
mmills@greeneespel.com
dwilliams@greeneespel.com

*Attorneys for Defendants City of*
*Cloquet, City of Two Harbors,*
*Western Lake Superior Sanitary District*

ANDREW, BRANSKY AND POOLE,
P.A.
 *s/ Timothy W. Andrew*
Timothy W. Andrew (227250)
302 West Superior Street, Suite 300
Duluth MN, 55802
(218) 722-1764
timandrew@duluthlawfirm.com

SHERMAN DUNN, P.C.
 *s/ Victoria L. Bor*
Victoria L. Bor  (D.C. #288852)
Jonathan D. Newman (D.C. #449141)
Robert D. Kurnick (D.C. #243683)
900 Seventh Street, N.W.  Suite 1000
Washington, D.C.  20001
(202)785-9300
bor@shermandunn.com
newman@shermandunn.com
kurnick@shermandunn.com

*Attorneys for Defendant Duluth Building*
*& Construction Trades Council*