# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Christian Labor Association;<br>Kaski Inc.; Nordic Group Inc.;<br>Roen Salvage Co.; Luke Krhin;<br>and Dylan Smith, | Civil No. 21-227 (DWF/LIB) |
| Plaintiffs, | |
| v. | **MEMORANDUM**<br>**OPINION AND ORDER** |
| City of Duluth; City of Cloquet;<br>City of Two Harbors; Western<br>Lake Superior Sanitary District; and<br>Duluth Building and Construction<br>Trades Council, | |
| Defendants. | |

---

Jonathan Franklin Mitchell, Esq., Mitchell Law PLLC; Thomas R. Revnew, Esq., Peters, Revnew, Kappenman & Anderson, P.A.; and Walter S. Zimolong, III, Esq., Zimolong, LLC; counsel for Plaintiffs.

Victoria Louis Bor, Esq., Jonathan Newman, Esq., and Robert D. Kurnick, Esq., Sherman Dunn, P.C.; Davida Sheri McGhee, Esq., and Monte A. Mill, Esq., Greene Espel PLLP; Timothy W. Andrew, Esq., Andrew and Bransky, P.A.; and Elizabeth A. Sellers, Esq., City of Duluth Attorney's Office; counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on Defendants City of Duluth, City of Cloquet, City of Two Harbors, Western Lake Superior Sanitary District, and Duluth Building and Construction Trade Counsel's (collectively "Defendants") Motion to Dismiss. (Doc. No. 24 ("Motion").)  For the reasons set forth below, the Court grants Defendants' Motion insofar as Plaintiffs' antitrust act claim is dismissed without prejudice for failure

to state a claim upon which relief can be granted; the rest of Defendants' Motion is denied.

## BACKGROUND

Plaintiffs Christian Labor Association, Kaski Inc., Nordic Group Inc., Roen Salvage Co., Luke Krhin, and Dylan Smith (collectively, "Plaintiffs") challenge the Project Labor Agreements ("PLAs") of four public entities: the cities of Duluth, Cloquet, and Two Harbors, and the Western Lake Superior Sanitary District (collectively, the "Public Entities").[1] (*See generally* Doc. No. 1 ("Compl.").) The PLAs were negotiated by and are between the Public Entities and the Duluth Building and Construction Trades Council (the "Building Trades"). (Compl. ¶ 18; *see also* Compl., Exs. 1-4; Doc. No. 31, Ex. A (collectively, "PLAs").) Plaintiffs allege that only contractors and subcontractors who agree to the PLAs are eligible to work on public-works projects governed by the agreements. (Compl. ¶ 20.)

The PLAs, discussed individually below, each require contractors and subcontractors to: (1) recognize a union that belongs to the Building Trades as the sole and exclusive bargaining representative of their employees working on PLA-projects; and

---

[1] PLAs are pre-hire collective bargaining agreements that typically provide for some combination of union recognition, compulsory union dues, or equivalents, and mandatory use of union hiring halls. In the private sector, PLAs are specifically authorized through Sections 8(e) and (f) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(e)(f). In 1993, the Supreme Court held that the NLRA does not prohibit government-mandated PLAs so long as the government acts as a market participant but did not address the legality of PLAs under state or federal competitive bidding laws. *Bldg. & Const. Trades Council of the Metro. Dist. v. Assoc. Builders &Contractors of Mass./R.I., Inc. ("Boston Harbor")*, 507 U.S. 218 (1993).

(2) hire their employees through the unions' job referral systems ("hiring halls"). (Compl. ¶¶ 21-22; *see also* PLAs.)  At the time of the Complaint, some PLAs also required employees hired to work on PLA-projects to become dues paying members of a Building Trades affiliated union and to maintain their union membership while working on the PLA project.  (*Id.* ¶¶ 23-24; *see also* PLAs.)  Plaintiffs claim that the PLA-imposed conditions violate their First and Fourteenth Amendment rights ("Count I" or "Constitutional Claim"), and that they restrain competition in violation of the Sherman Act, 15 U.S.C. §§ 1-2 ("Count II" or "Antitrust Claim").[2]  (Compl. ¶¶ 37-50.)

Specifically, Plaintiffs allege that the PLAs unlawfully require them to join, associate with, and/or financially support a Building Trades affiliated union as a condition to work on PLA-projects.  (*Id.* ¶¶ 24, 37-40.)  They further allege that the PLAs restrain competition by disqualifying contractors, subcontractors, and employees from working on the Public Entities' PLA projects unless they comply with the PLA terms. (*Id.* ¶¶ 45-46.)  Plaintiffs seek declaratory judgment and an injunction against the continued use of the PLAs, as well as damages for past enforcement.  (*Id.* ¶ 51.) Defendants argue that Plaintiffs' Complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) because this Court lacks subject matter jurisdiction when Plaintiffs lack standing and their claims are moot.  (Doc. No. 26 ("Def. Memo.") at 7-23; *see also* Doc. No. 40

---

[2]  Section 1 of the Sherman Antitrust Act (the "Sherman Act") declares it unlawful to contract or form a conspiracy "in restraint of trade or commerce among the several States."  15 U.S.C. § 1.  Section 2 of the Sherman Act makes it a felony to "monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States."  15 U.S.C. § 2.

("Reply") at 1-9.)  Alternatively, Defendants contend that Plaintiffs' Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiffs have failed to allege viable claims under either the Constitution or the Sherman Act.  (Def. Memo. at 23-36; Reply at 15-26.)

## A.    The PLAs

### 1.    City of Duluth

Defendant City of Duluth's ("Duluth") PLAs state that any contractor may bid for and be awarded work on a covered project, so long as the contractor is willing "to become a party to and comply with" the PLA.[3]  (Compl. Ex. 1 ("Duluth PLA I"), Art. II § 5; Ex. 4 ("Duluth PLA II"), Art. II § 5.)  At the time of the Complaint, each PLA required contractors to recognize the Building Trades affiliated unions as the exclusive collective bargaining agent of their employees on the project, and to secure their employees through the unions' job referral systems.  (*See* Duluth PLA I, Art. III § 1 and Art. IV; Duluth PLA II, Art. III § 1 and Art. IV.)  One of the PLAs also contained a "union security" clause which required all employees to be "remain" or "become" members of a Building Trades union while working on the project.  (Duluth PLA I, Art. III 3 § 2.)

On March 22, 2021, the Duluth City Council passed a resolution to strike the union security clause and to specifically provide that "[n]othing in this [PLA] requires employees to join a union or pay dues or fees to a union as a condition of working on a

---

[3]    Plaintiffs attached to their Complaint two versions of PLAs used by Duluth; one revised in 2018 (Duluth PLA I), and one undated (Duluth PLA II).

covered project." (Doc. No. 27 ("Helmer Decl.") ¶ 5, Ex. A ("Current Duluth PLA"), Art. II § 9; *see also id.* at 4, former Art. III § 2.)

### 2. City of Cloquet

Defendant City of Cloquet ("Cloquet") requires a PLA on any project "with a total City investment of $175,000 or more." Cloquet, Minn. Code § 9.2.02 (2021). Cloquet's PLA similarly permits any contractor to bid on and be awarded work so long as the contractor is willing to become party to and comply with the PLA. (Compl. Ex. 2 ("Cloquet PLA"), Art. II § 5.) It also requires contractors to recognize the Building Trades affiliated unions as their employees' exclusive collective bargaining agent and to secure their employees through the unions' job referral systems. (*Id.* Art. III § 1; Art. IV.)

At the time of the Complaint, Cloquet's PLA also included a union security clause that required employees to remain or become members of a Building Trades affiliated union while working on the project. (*Id.* Art. III § 2.) On March 16, 2021, the Cloquet City Council adopted a resolution to remove the union security clause and to specifically provide that "[n]othing in [the PLA] requires employees to join a union or pay dues or fees to a union as a condition of working on [a] covered project." (Doc. No. 29 ("Peterson Decl. I") ¶ 3, Ex. A ("Current Cloquet PLA") Art. II § 9; *see also id.* at 4, former Art. III § 2.)

On May 4, 2021, the Cloquet City Council repealed its city ordinance that required PLAs on city contracts. (Doc. No. 38 ("Peterson Decl. II") ¶ 3, Ex. A.) On May 18, 2021, the Cloquet City Council voted to reconsider its decision, and on June 1, 2021,

reinstated the PLA requirement on city projects.  (Doc. No. 41 ("Peterson Decl. III") ¶ 4, Ex. A.)

### 3.    City of Two Harbors

Defendant City of Two Harbors ("Two Harbors") requires use of a PLA "on each City construction project, with a total estimated cost of $150,000.00 or more."  Two Harbors, Minn. Code § 2.77 (2021).  Two Harbors's PLA requires all contractors operating on a covered project to abide by the agreement's terms, including recognizing the Building Trades affiliated unions as their employees' exclusive bargaining representative and hiring their employees through the unions' job referral systems. (Compl. Ex. 3, Art. II § 2, Art. III § 1 and Art. IV.)  At the time of the Complaint, Two Harbors's PLA included a union security clause that required employees who were already Building Trades affiliated union members to remain members while working on a covered project.  (*Id.* Art. III § 2.)  On March 22, 2021, the Two Harbors City Council adopted a resolution to remove the union security clause and to specifically provide that "[n]othing in [the PLA] requires employees to join a union or requires employees to join a union or pay dues or fees to a union as a condition of working on [a] covered project." (Doc. No. 30 ("Walker Decl.") ¶ 3, Ex. A. ("Current Two Harbors PLA") Art. II § 9; *see also id.* at 4, former Art. III § 2.)

### 4.     Western Lake Superior Sanitary District[4]

Defendant Western Lake Superior Sanitary District's ("Sanitary District") PLA requires all contractors who have been awarded work to abide by the PLA's terms, including recognizing the Building Trades affiliated unions as their employees' sole and exclusive bargaining representative, and hiring their employees through the unions' job referral systems.[5]  (Doc. No. 31, Ex. A ("Sanitary District PLA"), Art. II § 2, Art. III § 1, and Art. IV.)  The Sanitary District's PLA does not include a union security clause and expressly states, "[n]othing in this Agreement requires employees to join a union or pay dues or fees to a union as a condition of working on the covered project."  (*Id.* Art. II § 9.)

### B.     Plaintiffs

Plaintiff Christian Labor Association ("CLA") is an independent labor union that represents workers throughout the United States.  (Compl. ¶ 3.)  The Complaint alleges that because the CLA is not affiliated with the Building Trades, none of its members are permitted to work on projects subject to the Public Entities' PLAs unless they renounce their membership in CLA and join a Building Trades affiliated union.  (*Id.* ¶ 25.)  The Complaint alleges that the CLA has associational standing because its members would otherwise have standing to sue in their own right, the interests it seeks to project are

---

[4]     The Western Lake Superior Sanitary District is a "public corporation and political subdivision of the state" of Minnesota, established by statute.  Minn. Stat. § 458D.03, subd. 1 (2021).

[5]     Plaintiffs did not attach the Sanitary District's PLA to their Complaint; Defendants submitted the undated PLA as an exhibit.

germane to its purpose; and neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit.[6] (*Id.* ¶¶ 28-31.) The Complaint further alleges that the CLA's injuries, caused by the Public Entities' enforcement of the PLAs, will be redressed by an injunction against Defendants' continued use of the PLAs. (*Id.* ¶ 29.)

Plaintiffs Kaski Inc. ("Kaski") and Nordic Group Inc. ("Nordic Group") are union contractors that employ workers affiliated with the CLA, and Plaintiff Roen Salvage Co. is a non-union contractor (collectively, "Contractor Plaintiffs"). (*Id.* ¶ 4-6.) The Complaint alleges that because the Contractor Plaintiffs' employees "have exercised their constitutional right to decline membership in a [Building Trades] affiliated union," the Contractor Plaintiffs are ineligible to work on the Public Entities' PLA projects unless they recognize a union that their employees have declined representation from and hire employees from the union's job referral system rather than use their own employees. (*Id.* ¶ 32.) The Complaint alleges that the Contractor Plaintiffs have standing because the PLAs have prevented them from obtaining past work (*id.* ¶ 34), and because "they are likely to bid on the defendants' public-works projects in the reasonably foreseeable future, and each of them is able and ready to apply for that work" (*id.* ¶ 33). The Complaint further alleges that the Contractor Plaintiffs' injuries, caused by the Public

---

[6] The Complaint alleges that as a labor union, the CLA "has a fiduciary duty to its members and looks after their interests, and it seeks to maximize work opportunities for its employees and the contractors that employ them." (Compl. ¶ 30.)

Entities' enforcement of the PLAs, will be redressed by declaratory and injunctive relief that prevents Defendants' continued use of the PLAs.  (*Id.* ¶ 32.)

Plaintiffs Luke Krhin ("Krhin") and Dylan Smith ("Smith") (collectively "Employee Plaintiffs") are construction workers.  (Compl. ¶¶ 7, 9, 35.)  Krhin is employed by Nordic Group and is a member of the CLA.  (*Id.* ¶¶ 7, 35.)  Smith is employed by Roen Salvage and is not a union member.  (*Id*. ¶¶ 9, 35.)  The Complaint alleges that enforcement of the PLAs inflicts injury in fact on the Employee Plaintiffs because the PLAs have prevented and continue to prevent the Employee Plaintiffs from working on the Public Entities' PLA-projects because they "exercised their constitutional and statutory right to decline membership in a [Building Trades] affiliated union." (*Id.* ¶¶ 35, 36.)  The Complaint further alleges that the PLAs inflict injury because they "compel[] [the Employee Plaintiffs] to obtain employment through the [Building Trades] affiliated unions' job-referral systems."  (*Id.* ¶ 35)  The Complaint also alleges that the Plaintiff Employees' injuries, caused by the Public Entities' enforcement of the PLAs, will be redressed by declaratory and injunctive relief that prevents the Defendants' continued use of the PLAs.  (*Id.* ¶ 35.)

## DISCUSSION

## I.    Legal Standard

### A.    Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction.  To survive a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction has the burden of proving jurisdiction.

*V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted). "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case." *Kronholm v. F.D.I.C.*, 915 F.2d 1171, 1174 (8th Cir. 1990).

A motion to dismiss for lack of subject matter jurisdiction may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted). When a defendant brings a facial challenge—a challenge that, even if truthful, the facts alleged in a claim are insufficient to establish jurisdiction—a court reviews the pleadings alone, and the non-moving party receives the same protections as it would defending against a motion brought pursuant to Rule 12(b)(6). *Id.* (citation omitted). In a factual challenge to jurisdiction, the court may consider matters outside the pleadings, and the non-moving party does not benefit from the safeguards of Rule 12(b)(6). *Id.* at 728-30 n.4 (citations omitted) (holding that on a Rule 12(b)(1) motion challenging subject-matter jurisdiction, the court "has authority to consider matters outside the pleadings").

### 1.    Standing

Defendants first contend that the Court lacks subject matter jurisdiction because Plaintiffs lack standing. (Def. Memo. at 8-19; Reply at 1-9.) Defendants assert that their motion is a "factual attack" that challenges "the factual allegations on which subject matter jurisdiction is based." (Def. Memo. at 8.) Specifically, Defendants contend that the PLAs do not require union membership nor require CLA members to renounce their

membership as a condition to work on PLA projects, and that the PLAs no longer include union security clauses. (*Id.* at 9-11, 14.)

To the extent that Defendants rely on the amended PLAs as a "factual attack" to standing, the Court notes that standing is determined at the commencement of the lawsuit. *Carney v. Adams*, 141 S. Ct. 493, 499 (2020) (citations omitted). Moreover, the Court declines to construe Defendants' other challenges as factual attacks when they are based on an interpretation of what membership does or does not actually require. Accordingly, the Court finds that Defendants' challenge to standing is properly construed as a facial attack and thus looks only to the face of the pleadings and affords Plaintiffs the benefit of Rule 12(b)(6) safeguards.

"The party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The burden corresponds with the degree of evidence required at the relevant stage of litigation. *Id.* "Where . . . a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). However, at this stage, "general factual allegations of injury . . . may suffice. . . ." *Lujan*, 504 U.S. at 561; *see also Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013).

Article III permits federal courts to intervene only in "Cases" or "Controversies." U.S. Const., art. III., § 2, cl. 1. The standing doctrine serves to "identify those disputes which are appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting Lujan, 504 U.S. at 560). To have standing,

Plaintiffs must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547; *see Lujan*, 504 U.S. at 560-61. The injury in fact requirement requires Plaintiffs to demonstrate that they have experienced "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). If Plaintiffs lack standing, "the district court has no subject-matter jurisdiction" and must dismiss the case. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002).

A plaintiff seeking injunctive relief must show that he "faces a threat of ongoing or future harm." *Park v. Forest Serv. of the U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Likewise, a plaintiff's speculation that a future injury may occur is not sufficient to warrant injunctive relief. *Id.* at 497. A plaintiff must show that the threat of injury is "real and immediate." *Id.* at 494, 496.

### i.   Employee Plaintiffs

Defendants argue that the Employee Plaintiffs lack standing because they have failed to allege a particularized injury that affects them in a personal way when none of the PLAs required them to join a union as a condition to work on the Public Entities' PLA-projects. (Def. Memo. at 9-14.) Defendants contend that contractual language

requiring union membership as a condition of employment is a term of art that may be satisfied through a financial commitment that does not require renouncing membership in other unions. (Def. Memo. at 9-11, 14.) Defendants further contend that none of the Public Entities' PLAs currently contain union security clauses, and that even when they did, the Plaintiff Employees fail to establish a concrete, particularized injury when they fail to allege that they ever worked on a PLA project and were compelled to pay fees, or that any future risk of harm is anything but hypothetical. (*Id.* at 11-14; *see also* Doc. No. 40 ("Reply") at 2-5.)

Defendants similarly argue that because the Complaint fails to allege a specific PLA-project where the Employee Plaintiffs attempted to find work but were diverted to the Building Trades affiliated unions' hiring halls, nor identifies any project where that is likely to happen in the imminent future, the Employee Plaintiffs have failed to establish standing.[7] (Def. Memo. at 12-13; Reply at 5.)

---

[7]    Defendants argue that the Employee Plaintiffs are "like the plaintiffs in *Sierra Club v. Robertson*, who challenged a forest management plan for timber sales as *per se* unlawful without pointing to its application to any past or impending timber sales." (Def. Memo. at 13 (citing *Sierra Club v. Robertson*, 28 F.3d 753, 758 (8th Cir. 1994).)

In *Sierra Club,* the Eighth Circuit found that environmentalists lacked standing to challenge a land and resource management plan for national forests because they failed to allege an injury that was "certainly impending" in part because the management plan was a "general planning tool" and adoption of the plan did not dictate any "particular site-specific action causing environmental injury." 28 F.3d at 758.

As discussed below, the Court finds that the PLAs are more than a general planning tool and that they have a very specific impact on the Employee Plaintiffs when they categorically bar them from obtaining employment on PLA-projects unless they comply with conditions that the Court deems inflict injury in fact.

Plaintiffs argue that "[t]he inconvenience of having to go through a union hiring hall, and the compelled association with a union that the [E]mployee [P]laintiffs want no part of, is more than enough to establish Article III injury." (Doc. No. 39 ("Pl. Opp.") at 1.) They further argue that even if the membership condition required only a financial commitment, the Employee Plaintiffs were still injured by the compulsory union payments. (*Id.* at 2.) Plaintiffs also assert that because standing was determined at the time they filed their Complaint, it makes no difference whether the Public Entities have removed the union security clause from their PLAs. (*Id.* at 2-3.) Even without the union security clause, Plaintiffs argue that the Employee Plaintiffs remain injured by the requirement to obtain employment through a union hiring hall. (*Id.* at 2.)

Plaintiffs further argue that they need not allege that they worked on a covered project and were compelled to pay fees without their consent, nor identify projects on which they tried to find work. (*Id.* at 3.) Rather, they argue it is sufficient to allege that the PLAs have deterred them from seeking work on any PLA-project because they are unwilling to pay money to a Building Trades affiliated union or seek work through those unions' hiring halls. (*Id.* at 3-4.) Plaintiffs contend that unlike *Sierra Club* where there was only theoretical harm, the PLAs have immediate, actual effects on the Employee Plaintiffs and their job opportunities "by categorically precluding them" from working on the Public Entities' PLA-projects unless they consent to objectionable terms. (*Id.* at 4-5.)

The Court finds that Plaintiffs' allegations plausibly allege particular, concrete harm to the Employee Plaintiffs' legally protected interests which are caused by the Defendants' continued use of PLAs and likely to be redressed by the requested relief.

The Complaint specifically alleges that the Employee Plaintiffs cannot work on the Public Entities' PLA projects unless they join a union and seek employment through the Building Trades affiliated unions' job-referral system. (Compl. ¶ 35.) Even if the membership requirement was nothing more than a financial commitment, the Court finds that compulsory union payments still constitute a particularized, concrete injury. *Janus v. Am. Fed'n of State, Cty. & Mun. Employees, Council* 31, 138 S. Ct. 2448, 2485. The Court also finds that the inconvenience of mandatory participation in a union hiring hall and compelled association with that union, particularly when one has specifically chosen a different union or no union at all, also establishes a particularized, concrete injury.[8] Moreover, the Court finds that the very existence of these conditions, which in effect impede or defer the Employee Plaintiffs from obtaining work, is sufficient to establish injury in fact. *United States v. Students Challenging Regul. Agency Proc. (SCRAP)*, 412 U.S. 669, 689 n.14 (1973).

The Court also agrees with Plaintiffs that, unlike the hypothetical harm in *Sierra Club,* the PLAs have an immediate and actual effect on the Employee Plaintiffs and their job opportunities insofar as the Plaintiff Employees have been and remain unable to obtain work unless they comply with conditions the Court has already determined inflict injury in fact. Because the Complaint alleges that the Employee Plaintiffs have been and continue to be categorically barred from participating in any of the Public Entities' PLA

---

[8] It is conceivable that requiring employees who are not members of the Building Trades affiliated unions to participate in those unions' job referral systems is injurious in other ways which can only be revealed through discovery.

projects unless they consent to the PLAs' terms, they are clearly challenging the general practice of using PLAs that has deterred them from seeking or obtaining work; therefore, the Court finds it unnecessary that their allegations include specific projects and instances to defeat Defendants' motion to dismiss. While Plaintiffs will ultimately have to prove their allegations, at this stage in the proceedings, the Court finds them sufficient as pled. *Iowa League of Cities*, 711 F.3d at 869 ("[A]t the pleading stage a petitioner can move forward with general factual allegations of injury, whereas to survive a summary judgment motion, he must set forth by affidavit or other evidence specific facts." (internal quotation marks and citation omitted)).

Finally, the Court notes that Plaintiffs' allegations are sufficient to establish past harm as well as a real and imminent threat of future harm. Specifically, Plaintiffs allege that each Public Entity has enforced and continues to enforce a PLA agreement on their public works projects. (Compl. ¶ 19.) Plaintiffs also attached the Public Entities' PLAs to their Complaint which support their allegations.[9] Taking Plaintiffs' allegations as true, the Court finds that they have established that the Employee Plaintiffs are likely to suffer continued injury unless granted their requested relief.

---

[9] In their Reply, Defendants argue that Plaintiffs have not established injury in fact when not all of the PLAs required employees to pay union fees and Plaintiffs failed to establish which if any of the PLAs were used on any specific projects. (Reply at 3-5). Nonetheless, each PLA includes mandatory participation in the Building Trades affiliated unions' job referral system, which the Court also concludes inflicts injury in fact. (*See* Duluth PLA I, Art. IV; Duluth PLA II, Art. IV; Cloquet PLA, Art. IV; Two Harbors PLA, Art. IV; Sanitary District PLA, Art. IV.) Ultimately, discovery may reveal that one or both of the conditions did not cause Plaintiffs to suffer the requisite injury in fact to support Plaintiffs' standing; however, at this stage in the proceedings, the Court finds their allegations sufficient. *Iowa League of Cities*, 711 F.3d at 869.

### ii.    CLA

Defendants argue that because the Employee Plaintiffs cannot establish standing, the CLA's associational standing fails as well.  (Def. Memo. at 14-15.)  Defendants also argue that because none of the Public Entities' PLAs ever required employees to join a Building Trades affiliated union or renounce their membership in the CLA as a condition of working on a PLA-project, the CLA is not seeking to protect a right for which its members would otherwise have standing to sue in their own right.  (Def. Memo. at 14-15; Reply at 5-6.)

Plaintiffs contend that even if the PLAs did not require the CLA's members to join a Building Trades affiliated union, they still required the CLAs members to pay the union as a condition of work, which is sufficient to show that both the CLA's members and the CLA itself had standing at the time this lawsuit was filed.  (Pl. Opp. at 5.)

An association has standing to bring suit on behalf of its members when:  (1) its members would otherwise have standing to sue in their own right; (2) the interest it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977).)

The Court finds that the prerequisites to associational standing are present here. First, as discussed above, the Court finds that the Complaint has established that the Employee Plaintiffs, one of whom is a member of the CLA, have standing to sue in their own right.

The Court also finds that the interests the CLA seeks to protect are germane to its purpose. The Complaint alleges that the CLA "has a fiduciary duty to its members and looks after their interests, and it seeks to maximize work opportunities for its employees and the contractors that employ them." (Compl. ¶ 30.) Even if the PLAs' membership condition does not require employees to renounce their membership in the CLA, the Court still finds that protecting its members from compulsory union fees and mandatory participation in another union's job referral system is germane to protecting its members and maximizing their work opportunities. Indeed, if the CLA's members are categorically barred from participating in any of the Public Entities' PLA projects unless they comply with conditions the Court has determined inflict injury in fact, the Court finds that the CLA, which is membership based and committed to maximizing its members' work opportunities, is well within its realm to attempt to remedy these injuries on behalf of its members and to secure its own longevity.

Finally, the Court finds no reason that Plaintiffs' claims or requested relief cannot be properly resolved in a group context. Because the Complaint satisfies all requirements set forth in *Hunt*, the Court finds that Plaintiffs have properly alleged that the CLA has standing to bring suit on behalf of its members. *Hunt*, 432 U.S. at 343.

### iii. Contractor Plaintiffs

Finally, Defendants argue that the Contractor Plaintiffs lack standing because their allegations are insufficiently concrete and particularized to support their claim for damages and too conjectural and hypothetical to support their claim for declaratory and injunctive relief. (Def. Memo. at 15-19; Reply at 7-9.) Specifically, Defendants argue

that the Complaint contains no allegations that: (1) any of the Contractor Plaintiffs actually perform work in Duluth, Cloquet or Two Harbors, or for the Sanitary District; (2) any Public Entity actually used a PLA on any particular project, much less any project the Contractor Plaintiffs bid or would have bid on; (3) any Public Entity imminently plans to use a PLA on any project; or (4) if there is an imminent plan to use a PLA, whether the Contractor Plaintiffs are qualified to bid for the work.[10] (Def. Memo. at 16-17.)

Defendants further argue that Plaintiffs point to nothing in the PLAs that bars the Contractor Plaintiffs from bidding on work and contend that the Contractor Plaintiffs simply choose not to bid because they do not like the PLA requirements. (Def. Memo. at 18.) Defendants therefore assert that any injury the Contractor Plaintiffs have suffered is a result of their own choices. (*Id.*) Finally, Defendants argue that Plaintiffs' "unadorned assertions" that the Contractor Plaintiffs are ready and able to bid on the Public Entities' public works projects in the reasonably foreseeable future fail under any pleading standard and are insufficient to allege a concrete, particularized, and imminent injury. (*Id.* at 19; Reply at 8.)

Plaintiffs argue that the allegation that "each Contractor Plaintiff has been prevented from obtaining past work on account of the defendants' project labor

---

[10]   Defendants rely on *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville,* 508 U.S. 656 (1993) to argue that Plaintiffs must include job-specific allegations to establish standing. While the United States Supreme Court did state that allegations about "a specific project" would be "sufficient to establish standing," it also stated that such allegations may not be necessary. *Ne. Fla. Chapter*, 508 U.S. at 668 (internal quotation marks and citation omitted).

agreements," sufficiently establishes a past injury in fact fairly traceable to the Defendants that can be redressed by an award of nominal or compensatory damages. (Pl. Opp. at 5 (citing Compl. ¶ 34).) Plaintiffs further argue that the pleading standard does not require detailed factual allegations, and that because the Complaint alleges that the Contractor Plaintiffs are "able and ready" to apply, and "likely to apply" for contracts from the Public Entities, "in the reasonably foreseeable future" if granted their requested relief, they have properly alleged that the Contractor Plaintiffs have standing to seek prospective relief against future enforcement of the PLAs. (*Id.* at 5-6 (citing Compl.¶ 33).)

Plaintiffs contend that just because the Contractor Plaintiffs are allowed to bid on PLA projects, they still suffer injury in fact because they cannot actually obtain work unless they hire workers through the Building Trades affiliated unions' job referral system in lieu of using their own employees. (Pl. Opp. at 7.) Plaintiffs also assert that while Defendants are correct to observe that the Contractor Plaintiffs face a choice of whether to seek work on PLA projects, it is the imposition of the choice that inflicts the injury. (*Id.*) Finally, Plaintiffs reiterate that at this stage in the proceedings, their allegations are sufficient to withstand Defendants' motion to dismiss because they need not yet prove standing. (*Id.* at 7-8.)

The Court finds that Plaintiffs' allegations, taken as true at this stage of the case, plausibly allege particular, concrete harm to the Contractor Plaintiffs' legally protected interests which are caused by the Defendants' continued use of PLAs and likely to be redressed by the requested relief.

While Plaintiffs' allegations are not detailed, the Court finds that they are still sufficient to establish standing for both past injury and for prospective relief.[11] The Complaint clearly alleges that the PLAs have prevented the Contractor Plaintiffs from obtaining work that they are ready and able to perform, and that but for the PLAs, they are likely to apply for work from the Public Entities in the reasonably foreseeable future.[12] (Compl. ¶¶ 33-35.) The Court finds that these allegations, far from a generalized grievance, establish that the PLAs inflict an actual, concrete, particularized, and immediate injury on the Contractor Plaintiffs' ability to obtain work from the Public Entities.

As discussed above, because Plaintiffs oppose the general practice of using PLAs, the Court finds it unnecessary that their Complaint include job-specific allegations to defeat Defendants' motion. Like the Employee Plaintiffs, the Contractor Plaintiffs will

---

[11]    It is clear to the Court that a contractor who declines to seek work rather than forego use of his or her own employees has suffered a concrete, particularized injury akin to any person who is unwilling to accept an onerous condition of employment. The Court also notes that the injury in fact is not a result of the contractor's choice, but in having to make the choice at all. Here, the Complaint clearly establishes that the PLAs require the Contractor Plaintiffs to choose between working on PLA projects or using their own employees. (*See* Compl. ¶ 33.)Thus, the Court finds the requisite causal connection between the PLAs and the Contractor Plaintiffs' alleged injury in fact to support standing.

[12]    In *Carney*, the U.S. Supreme Court held that a plaintiff could establish that he would suffer a concrete, particularized, and imminent injury beyond a generalized grievance by showing that but for some obstacle, he was likely to apply for something in the reasonably foreseeable future. *Carney*,141 S. Ct. at 499-500. *Carney* further held that the plaintiff could make this showing only if he were "able and ready" to apply. *Id.* The U.S. Supreme Court ultimately held that the plaintiff could not establish standing because he failed to prove that he was able and ready to apply in the reasonably foreseeable future. Here, because proof is not required at this stage in the proceedings, the Court finds Plaintiffs' allegations sufficient.

ultimately have to show that their allegations are true; however, at this stage in the proceedings, the Court finds them sufficient as pled.[13] *Iowa League of Cities*, 711 F.3d at 869.

## 2. Mootness

Defendants next argue that the Court lacks subject matter jurisdiction over Plaintiffs' Constitutional Claim for prospective relief because it is moot.[14] (Def. Memo. at 20-23; Reply at 10-15) Specifically, Defendants contend that because the PLAs have been amended to no longer include a union security clause and to specify that nothing in them requires employees to join a union or pay dues or fees to a union as a condition of working on a covered project, they have provided Plaintiffs with their requested relief and eliminated the need for court action. (Pl. Memo. at 21.)

Article III's case and controversy requirement prohibits federal courts from hearing disputes that are no longer live. *Allen v. Likins*, 517 F.2d 532, 534 (8th Cir. 1975). Because courts have no power to issue advisory opinions, a case must involve "a real and substantial controversy" as opposed to a mere academic dispute based on

---

[13]     The Court received Defendants' June 30, 2021 letter with supplemental authority in support of their argument that standing is not dispensed in gross. (Doc. No. 43 ("Letter) (citing *TransUnion LLC v. Ramirez*, ---U.S.---, 2021 WL 2599472 at *10 (June 25, 2021).) In *TransUnion*, the U.S. Supreme Court stated that "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 2021 WL 2599472 at *10. The Court briefly notes that while Defendants are correct that standing is not dispensed in gross, the Court finds that Plaintiffs have properly established standing for each of their claims and for each form of relief that they seek.

[14]     Because Defendants' mootness argument is based on the content of the amended PLAs, the Court construes it as a factual challenge to its subject matter jurisdiction.

hypothetical facts. *Id.* (internal quotation marks and citation omitted); *see also Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1103 (8th Cir. 2000). "A case is moot when it is 'impossible for the court to grant any effectual relief whatever.'" *Id.* (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). The party asserting that a case has become moot bears "[t]he heavy burden of proving mootness." *Kennedy Bldg. Assocs. v. Viacom Inc.*, 375 F.3d 731, 745 (8th Cir. 2004) (internal quotation marks and citation omitted).

Typically, "voluntary cessation of challenged conduct does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth v. Laidlaw Envtl. Servs.(TOC) Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle Inc.*, 455 U.S. 283, 289 (1982)). To establish mootness on the basis of a defendant's voluntary cessation of the alleged unlawful conduct, a defendant must meet the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190.

Defendants argue that the voluntary-cessation doctrine does not apply because "it is not virtually certain" that the Public Entities will reinstate the union security clause. (Def. Memo. at 21-22).[15] Defendants elaborate that there is no reason to believe any

---

[15]    The Court notes that to overcome the voluntary-cessation doctrine, Defendants must show is that it is "absolutely clear" the Public Entities could not reasonably reinstate the union security clause. *Friends of the Earth*, 528 U.S. at 190. While, the Eighth Circuit has stated that statutory changes that discontinue a challenged practice are usually enough to render a case moot with the rare exception for when "it is virtually certain" that the repealed law will be reenacted, *Libertarian Party of Arkansas v. Martin*, 876 F.3d 948, 951 (8th Cir. 2017), here, the amendments to the PLAs were not statutory amendments. While Defendants contend that the city council resolutions to amend the

Public Entity will reinsert a union security clause because the city councils approving the amendments voted unanimously to do so and because the Building Trades expressed support for their removal.  (*Id.* at 21 *; see also* Doc. Nos. 27-31.)

Plaintiffs argue that Defendants' post-complaint amendments are a "textbook example" of "voluntary cessation" which do not moot Plaintiffs' claim.  (Pl. Opp. At 9-10.)  They further argue that because their constitutional claim also stems from the PLAs' job-referral requirement, and because they seek damages for past enforcement of the PLAs in addition to prospective relief, their claim remains viable regardless of the amendments.  (*Id.* at 10-11.)

The Court concludes that the recent changes to the PLAs do not moot Plaintiffs' claims.  First, it is not "absolutely clear" to the Court that the Public Entities will not reinstate a union security clause in their PLAs.[16] *Friends of the Earth*, 528 U.S. at 190. Second, even if it were absolutely clear that Defendants will not reinstate the union security clause, Plaintiffs' constitutional claim is not so limited.  With or without the recent amendments, each of the PLAs still requires mandatory participation in the Building Trades affiliated unions' job referral system.  (*See* Duluth PLA I, Art. IV;

---

PLAs are synonymous with statutory changes (Reply at 11-12), the Court disagrees.  The Court cannot conclude that the city councils will not reinstate the union security clause just as easily as they took it out soon after this lawsuit was filed.

[16]     The record reflects that on May 4, 2021, the Cloquet City Council repealed its city ordinance that required PLAs on city contracts, only to reinstate the requirement on June 1, 2021.  (Peterson Decl. II ¶ 3; Peterson Decl. III ¶ 4.)  This example highlights the volatility of the PLAs and fails to assuage the Court that Cloquet or any other Public Entity will not just as easily reinstate the union security clause when it is so inclined.

Duluth PLA II, Art. IV; Cloquet PLA, Art. IV; Two Harbors PLA, Art. IV; Sanitary District PLA, Art. IV.)  Moreover, because Plaintiffs seek damages for both past harm and prospective relieve, the Court finds that the amendments do not in fact provide Plaintiffs with their requested relief or eliminate the need for court action.

In short, the Court finds that each group of Plaintiffs has standing, and Plaintiffs' claims are not moot.[17]  Therefore, the Court finds that it has jurisdiction over this matter.

## B.    Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[17]    The Court received Defendants' June 30, 2021 letter with supplemental authority in support of their argument that at least one plaintiff must have standing to pursue each claim.  (Doc. No. 43 ("Letter").)  Because the Court finds that each group of Plaintiffs has standing, the Court need not address the argument.

570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id*. at 555.  As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

### 1.    Constitutional Claim (Count I)

Defendants argue that Plaintiffs' claim that the PLAs violate the Constitution fails because the PLAs do not actually require membership and because any allegation that some of the PLAs require employees to pay union dues is moot.  (Def. Memo. at 23; Reply at 15.)  They further argue that insofar as the Employee Plaintiffs allege that the PLAs violate their association rights by requiring them to seek employment through the unions' job referral systems, that claim is actually an attack on a union's ability to act as their exclusive bargaining agent which higher courts have found does not impinge on the right of association.[18]  (Def. Memo. at 23-24; Reply at 15-16.)  Plaintiffs argue that their claim is sufficient as pled because it is not moot and because they do not challenge the constitutionality of exclusive representation.

---

[18]    In their Reply, Defendants argue that to the extent Plaintiffs claim that the job referral system itself violates the Constitution by requiring them to associate with union members, their claim still fails because the Constitution only protects against intimate and expressive association.  (Reply at 16 n.7 (citing *Roberts v. U.S. Jaycees,* 468 U.S. 609, 618 (1984)).)  The Court finds this argument premature, more properly made on a motion for summary judgment.

As discussed above, the Court finds that Plaintiffs' First amendment Claim is not moot. The Court also finds that the claim plausibly alleges a violation of Plaintiffs' constitutional protections, even if the membership requirement boils down to just a financial commitment. In *Janus*, the U.S. Supreme Court found that compelled payments to a union for collective bargaining services violated non-union members' First Amendment right to "refrain from speaking" by requiring them to "subsidize the speech of other private speakers." 138 S. Ct. at 2463-64. Here, Plaintiffs allege that the PLAs "compel[] workers to join and pay a [Building Trades] affiliated union as a condition of working on the defendant' public-works projects." Assuming this allegation is true, as it must, the Court finds that Plaintiffs have plausibly alleged a constitutional violation.

Plaintiffs also allege that mandatory participation in the Building Trades affiliated unions' job referral systems implicates nonmembers' freedom not to associate with a union. (Compl. ¶¶ 32, 35, 37.) Defendants contend that because the Building Trades affiliated unions operate their job referral systems on covered projects "by virtue of their status as the employees' exclusive bargaining representative and under authority granted by the PLAs," an attack on the hiring hall practice is an attack on exclusive representation as a whole. (Def. Memo. at 24.) Under this reasoning though, any number of unconstitutional practices could escape review by justifying them as a part of exclusive representation. Here, the Court finds the claim that mandatory participation in the Building Trades affiliated unions' job referral system as a condition of employment on PLA projects plausibly alleges a violation of Plaintiffs' Constitutional rights. At this

stage in the proceedings, Plaintiffs' allegation is sufficient to defeat Defendants' motion to dismiss.

While Plaintiffs' allegations are not detailed, the Court finds that they provide sufficient "factual enhancement" beyond mere "labels and conclusions" or "naked assertions." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. 544 at 555, 557.) Indeed, the Complaint clearly alleges what the PLAs require and how those requirements harm Plaintiffs. Plaintiffs also attach the PLAs to the Complaint, which support their allegations. The Court finds these allegations sufficient to notify Defendants precisely of what their claim is and the grounds upon which it rests, and "to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556. In short, the Court finds that Plaintiffs' Constitutional Claim is sufficient to withstand Defendants' motion to dismiss because it is properly pled and sufficient to establish that relief may be granted.

### 2. Antitrust Claim (Count II)

Defendants argue that Plaintiffs' antitrust claim is fatally defective because: (1) it fails to state a violation of the Sherman Act when it does not allege an injury to competition or identify the relevant market within which competition was allegedly affected; (2) even with Article III standing, Plaintiffs do not allege the type of injury required to confer antitrust standing; and (3) the PLAs are exempt from scrutiny under the nonstatutory labor exemption. (Def. Memo. at 25-36.)

The Court need only address Defendants' argument that Plaintiffs fail to plead the necessary elements of an antitrust claim to conclude that it fails.[19] "To demonstrate a violation of Section 1 of the Sherman Act, a plaintiff must provide proof of an illegal contract, combination, or conspiracy which results in an unreasonable restraint of trade." *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 558 (8th Cir. 1998) (citing *State Oil Co. v. Khan,* 522 U.S. 3, 10 (1997). A plaintiff must also allege harm "not just to a single competitor, but . . . to competition itself." *NYNEX Corp. v. Discon Inc.*, 525 U.S. 128, 135 (1998). Finally, absent an agreement that is *per se* unlawful, a plaintiff "has the burden of alleging a market in order to establish a plausible antitrust claim."[20] *Double D Spotting Serv.*, 136 F.3d 554 at 560.

Section 2 of the Sherman Act also requires a plaintiff to allege a valid relevant market, as well as that the defendant "(1) possessed monopoly power in the relevant market and (2) willfully acquired or maintained that power as opposed to gaining it as a result 'of a superior product, business acumen, or historical accident." *Id*. (internal quotation marks and citation omitted).

---

[19]    Because the Court finds that Plaintiffs' fail to plead the necessary elements on an antitrust act claim, the Court does not address Defendants' other arguments that the claim fails.

[20]    Unless the agreement is *per se* unlawful, an antitrust claim is "analyzed under a 'rule of reason,' according to which the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition." *State Oil Co.*, 522 U.S. 3 at 10-11. This analysis "involves an inquiry into the market structure and the defendant's market power in order to assess the actual effect of the restraint." *Double D Spotting Serv.*, 136 F.3d at 558 (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984).

Plaintiffs argue that they have satisfied their pleading requirement because their Complaint specifically describes, and attaches as an exhibit, an agreement between the Public Entities and the Building Trades that restrains trade. (Pl. Opp. at 17-18.) Plaintiffs further argue that they need not "spell out each element of [their] cause of action," nor "show [their] cards before taking discovery." (*Id.* at 18.) To this end, Plaintiffs contend that "if [they] decide to pursue a rule-of-reason claim under Section 1 or a monopolization claim under Section 2 [of the Sherman Act], then they can define the relevant "market" at summary judgment; there is no requirement that they do so in the complaint."[21] (*Id.* at 18-19.) Finally, Plaintiffs argue that "Defendants are flatly wrong" to say that they have failed to allege an adverse effect on competition when "[t]he Complaint is replete with allegations that the PLAs have hindered competition by preventing non-union contractors and their employees from competing with [Building Trades] affiliated contractors in their efforts to obtain work on the defendants' construction projects."[22] (*Id.* at 20.)

---

[21] Plaintiffs also assert that Defendants are wrong to assume that a rule-of-reason claim will even apply when Section 1 of the Sherman Act also prohibits agreements that are *per se* unlawful. (Pl. Opp. at 19.) Notably, Plaintiffs' Complaint does not include any allegation that the PLAs restrict trade in a way that is *per se* unlawful.

[22] Plaintiffs cite their allegations that the PLAs "preclude[] non-union workers—as well as workers who belong to unions that are not affiliated with the Duluth Building and Construction Trades Council—from working on any public-works project subject to the PLA.," (Compl. ¶ 24); and that "Plaintiffs Kaski, Nordic Group, and Roen Salvage have. . . been prevented from obtaining past work on account of the defendants' project labor agreements" (*id.* ¶ 25).

The Court disagrees. "The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's Rule 12(b)(6) motion." *Double D Spotting Serv.*, 136 F.3d 554 at 558 (internal quotation marks and citation omitted). Here, Plaintiffs' Complaint does not offer even "[t]hreadbare recitals of the elements of [their] cause of action." *Iqbal*, 556 U.S. at 678. Instead, Plaintiffs argue that they need not state the nature of their Antitrust Claim prior to discovery, and only then will reveal whether they intend to pursue a Section 1 "unlawful *per se*" or "rule of reason" claim, or a Section 2 monopolization claim. The Court respectfully notes that Plaintiffs may not dodge their pleading requirement by resting on the conclusory statement that the PLAs somehow violate the Sherman Act.

The Court also notes that while Plaintiffs contend that they have properly alleged an adverse effect on competition by describing how they prevent Plaintiffs from obtaining work, "[t]he antitrust laws exist to protect *competition*, not *competitors.*" *Razorback Ready Mix Concrete Co. v. Weaver,* 761 F.2d 484, 488 (8th Cir. 1985) (emphasis in original) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat,* 429 U.S. 477, 488 (1977)). Here, the PLAs permit anyone willing to play by their rules to bid for and obtain work on exactly the same terms; they give no one a competitive advantage or disadvantage. While the rules to compete may be unfair, they do not ultimately impede competition. *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 225 (1993) ("[T]he federal . . . antitrust laws . . . do not create a federal law of unfair

competition."). Because Plaintiffs' allegations rest squarely on alleged harm imposed by the terms to compete, the Court finds that they fail to allege injury to competition itself.

In short, because Plaintiffs' Complaints omits all essential elements of a claim under the Sherman Act, the Court finds that they have failed to state an antitrust act claim upon which relief can be granted and dismisses it without prejudice.

## CONCLUSION

For the reasons set forth above, the Court finds that it has subject matter jurisdiction over this matter because the Plaintiffs have standing, and their claims are not moot. The Court also finds that while Plaintiffs' Constitutional Claim is sufficient as pled, their Antitrust Claim fails to state a claim upon which relief may be granted. Therefore, the Court grants Defendants' motion insofar as Plaintiffs' Antitrust Claim is dismissed without prejudice.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. No. [24]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  This Court has subject matter jurisdiction over this matter because the Plaintiffs have standing and their claims are not moot.

2.  Plaintiffs' Antitrust Claim (Count II) is **DISMISSED WITHOUT PREJUDICE**.

Dated:  July 2, 2021                      s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge